IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  10-cv-00609-PAB-MEH

THE INDEPENDENCE INSTITUTE,
JON CALDARA,
DENNIS POLHILL,
JESSICA CORRY,
MASON TVERT,
RUSSELL HAAS,
DOUGLAS CAMPBELL,
LOUIS SCHROEDER,
SCOTT LAMM,
ALBIE HURST, and
DANIEL KENNEDY,

      Plaintiffs,

v.

BERNIE BUESCHER, in his official capacity as Colorado Secretary of State,

      Defendant.

---

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

---

      This civil rights case comes before the Court on plaintiffs' motion for preliminary injunction [Docket No. 15].  Plaintiffs, who are involved in the ballot initiative process in Colorado, challenge several aspects of the state statutes which govern the process. The Court heard testimony presented by plaintiffs and defendant over the course of three days.

      In their second amended complaint, plaintiffs assert ten claims for relief – nine alleging a violation of the First Amendment's protection of the exercise of free speech and one claim alleging both a violation of free speech and a violation of the due process

clause of the Fourteenth Amendment. Plaintiffs' pending motion asks the Court to provide preliminary injunctive relief on each of its ten claims.

The Court previously entered an order [Docket No. 60] addressing the motion for preliminary injunction with respect to plaintiffs' fifth claim for relief and portions of their other claims as they relate to enforcement of the statute challenged under the fifth claim. The Court now takes up the remainder of the issues raised in plaintiffs' motion for preliminary injunction.

The Court's subject-matter jurisdiction over plaintiffs' claims is based upon the existence of a federal question pursuant to 28 U.S.C. § 1331.

## I. LEGAL STANDARD – PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction, the moving party bears the burden of establishing that four factors weigh in his or her favor: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resource Defense Council, Inc.*, --- U.S. ----, 129 S. Ct. 365, 374 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (internal quotation marks omitted). "[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *See Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting

*University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted). Consequently, granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enterprise Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

There are three types of disfavored preliminary injunctions: preliminary injunctions that alter the status quo; "mandatory preliminary injunctions" which require a party to take some affirmative act rather than refrain from some act; and preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd on other grounds*, 546 U.S. 418 (2006)). Before a court grants a disfavored preliminary injunction, a movant seeking such an injunction must make a heightened showing of the four factors. *RoDa Drilling*, 552 F.3d at 1209; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1177 (10th Cir. 2003), *aff'd en banc*, 389 F.3d 973 (10th Cir. 2004). Plaintiffs do not seek a disfavored preliminary injunction and, therefore, need not make the heightened showing of the preliminary injunction factors.

## II.  ANALYSIS

In 2009, the Colorado General Assembly passed, and the Governor signed into law, House Bill 09-1326 ("H.B. 1326"), which amended the rules and procedures dealing with the initiative and referendum processes in Colorado. Plaintiffs claim that

various sections of the law, as amended by H.B. 1326, infringe their rights under the First and Fourteenth Amendments of the United States Constitution.

## A.  First Claim for Relief

Plaintiffs' first claim for relief alleges that Colorado Revised Statutes § 1-40-112(1) violates the free speech protections of the First Amendment.  This subsection of the law states that: "No person shall circulate a petition for an initiative or referendum measure unless the person is a resident of the state, a citizen of the United States, and at least eighteen years of age at the time the petition is circulated."  Plaintiffs challenge the requirement that petition circulators be residents of the state of Colorado.

Defendant has conceded both in his written response and during the hearings on this matter that, in light of the Tenth Circuit's decision in *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008), this section of the law violates the First Amendment.  *See* Secretary's Br. in Opp'n to Pls.' Mot. for Preliminary Inj. [Docket No. 22] at 9.  In *Yes On Term Limits*, the Tenth Circuit applied strict scrutiny to an Oklahoma statute banning non-resident petition circulators.  After concluding that the ban was not narrowly tailored, the court held that the statute violated the First Amendment.  *Yes On Term Limits, Inc.*, 550 F.3d at 1028-30.  With defendant's concession that there is sufficient factual similarity between *Yes On Term Limits* and the present record, the Court finds and concludes that plaintiffs are likely to succeed on the merits of this claim.

As for the likelihood of irreparable harm to plaintiffs in the absence of a preliminary injunction, until very recently, it appeared defendant would not enforce the

residency requirement. However, in a motion filed on August 11, 2010 [Docket No. 71], the defendant informed the Court that, despite his admission that the residency requirement is unlawful under the present state of the record, he feels compelled to enforce the requirement in the absence of a preliminary injunction. He further explains that enforcement of this provision will result in the invalidation of plaintiff Jon Caldara's petition which was submitted on July 30, 2010.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Based on the findings of fact in the Court's June 11, 2010 order and, more importantly, on defendant's recent representations regarding the potential invalidation of the submitted petition, the Court finds that there is a strong likelihood of irreparable harm to plaintiff Caldara if a preliminary injunction is not entered.

Finally, the Court determines that the balance of the equities and the public interest favor a preliminary injunction. Plaintiffs have a fundamental interest in being able to express their desire for political change and actively work toward achieving that goal through mechanisms such as ballot initiatives. Ultimately, the present lack of evidence that the wholesale exclusion of out-of-state petition circulators achieves a

5

legitimate state goal, balanced against the fact that the exclusion would greatly hinder Mr. Caldara's First Amendment rights, the balance of equities favors plaintiffs. The public interest analysis tracks closely with the balance of the equities; there is not a sufficient public interest in allowing this law to be enforced. As a result, defendant shall be preliminarily enjoined from enforcing the residency requirement in Colorado Revised Statutes § 1-40-112(1).

### B. Second Claim for Relief

Plaintiffs' second claim for relief alleges that Colorado Revised Statutes § 1-40-111(2)(b)(I)(C) violates the free speech protections of the First Amendment. Section 1-40-111(2)(b)(I)(C) mandates that "[a] notary public shall not notarize an affidavit required pursuant to paragraph (a) of this subsection (2), unless: . . . [t]he circulator presents a form of identification, as such term is defined in section 1-1-104(19.5)." Section 1-1-104(19.5)(a) lists a number of forms of permissible "identification." However, § 1-1-104(19.5)(b) requires that "[a]ny form of identification indicated in paragraph (a) of this subsection (19.5) that shows the address of the eligible elector shall be considered identification only if the address is in the state of Colorado."

In their motion for preliminary injunction, plaintiffs argue that Colorado Revised Statutes § 1-40-111(2)(a) is also implicated in this discussion. That subsection states:

> To each petition section shall be attached a signed, notarized, and dated affidavit executed by the person who circulated the petition section, which shall include his or her printed name, the address at which he or she resides, including the street name and number, the city or town, the county, and the date he or she signed the affidavit; that he or she has read and understands the laws governing the circulation of petitions; *that he or she was a resident of the state*, a citizen of the United States, and at least eighteen years of age at the time the section of the petition was circulated and signed by the listed electors; that he or she circulated the

section of the petition; that each signature thereon was affixed in the circulator's presence; that each signature thereon is the signature of the person whose name it purports to be; that to the best of the circulator's knowledge and belief each of the persons signing the petition section was, at the time of signing, a registered elector; that he or she has not paid or will not in the future pay and that he or she believes that no other person has paid or will pay, directly or indirectly, any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix his or her signature to the petition; that he or she understands that he or she can be prosecuted for violating the laws governing the circulation of petitions, including the requirement that a circulator truthfully completed the affidavit and that each signature thereon was affixed in the circulator's presence; and that he or she understands that failing to make himself or herself available to be deposed and to provide testimony in the event of a protest shall invalidate the petition section if it is challenged on the grounds of circulator fraud.

Colo. Rev. Stat. § 1-40-111(2)(a) (2010) (emphasis added). Although the second claim in plaintiffs' second amended complaint [Docket No. 47] makes no reference to § 1-40-111(2)(a), the Court finds that this subsection of the law is necessarily implicated in the enforcement of the challenged provisions. As a result, the Court addresses § 1-40-111(2)(a) here as well.

For the same reasons stated above in the discussion of plaintiffs' first claim, the Court finds that, with respect to the residency requirement in § 1-40-111(2)(b)(I)(C) and § 1-40-111(2)(a): (1) plaintiffs have a likelihood of success on the merits, (2) there is a likelihood of irreparable harm if a preliminary injunction is not issued, (3) the balance of equities favors plaintiffs, and (4) the public interest favors the issuance of a preliminary injunction. As a result, defendant shall be preliminarily enjoined from enforcing the Colorado residency requirement in Colorado Revised Statutes § 1-40-111(2)(a) and § 1-40-111(2)(b)(I)(C).

**C.  Legal Standard – First Amendment**

As discussed in the Court's June 11, 2010 order, state regulations of the ballot initiative process are generally evaluated under one of two tests, a balancing test or strict scrutiny.  Generally speaking, the test applied depends on the severity of the burden placed on speech.  Rules which place a significant impediment in an initiative proponent's way face strict scrutiny, while a rule which imposes no more than an inconvenience or an insubstantial obstacle need only survive a balancing test.  *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *see also American Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1098 (10th Cir. 1997) ("[T]he rigorousness of our inquiry depends upon the extent to which the challenged law burdens plaintiffs' First and Fourteenth Amendment rights.").  Therefore, the essential consideration is how severe of a burden a particular regulation effectively places on the underlying speech.

Under strict scrutiny, "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest."  *Timmons*, 520 U.S. at 358.  Under the balancing test, a court must balance "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" with "the precise interests put forward by the State as justifications for the burden imposed by its rule."  *Campbell v. Buckley*, 203 F.3d 738, 742-43 (10th Cir. 2000) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Timmons*, 520 U.S. at 358; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The Court must evaluate "the legitimacy and strength" of each of the State's purported

8

interests; however, in doing so, the Court "also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Campbell*, 203 F.3d at 743 (quoting *Anderson*, 460 U.S. at 789); *see also Timmons*, 520 U.S. at 358; *Burdick*, 504 U.S. at 434. "A balancing test takes account of the Supreme Court's recognition that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Campbell*, 203 F.3d at 745 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Although "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions," *Timmons*, 520 U.S. at 358, that determination is not automatic.

### D.  Third Claim for Relief

Plaintiffs' third claim for relief alleges that portions of Colorado Revised Statutes § 1-40-111(2)(a) and § 1-40-111(3)(a) violate the free speech protections of the First Amendment.  Section 1-40-111(2)(a) states:

> [t]o each petition section shall be attached a signed, notarized, and dated affidavit executed by the person who circulated the petition section, which shall include . . . that he or she understands that failing to make himself or herself available to be deposed and to provide testimony in the event of a protest shall invalidate the petition section if it is challenged on the grounds of circulator fraud.

Section 1-40-111(3)(a) states:

> As part of any court proceeding or hearing conducted by the secretary of state related to a protest of all or part of a petition section, the circulator of such petition section shall be required to make himself or herself available to be deposed and to testify in person, by telephone, or by any other means permitted under the Colorado rules of civil procedure.  Except as set forth in paragraph (b) of this subsection (3), the petition section that is the subject of the protest shall be invalid if a circulator fails to comply with

the requirement set forth in this paragraph (a) for any protest that includes an allegation of circulator fraud that is pled with particularity regarding:

(I)     Forgery of a registered elector's signature;

(II)    Circulation of a petition section, in whole or part, by anyone other than the person who signs the affidavit attached to the petition section;

(III)   Use of a false circulator name or address in the affidavit; or

(IV)   Payment of money or other things of value to any person for the purpose of inducing the person to sign the petition.

Plaintiffs claim that requiring petition gatherers to make themselves available for subsequent hearings burdens core political speech and, thus, faces strict scrutiny.  In their second amended complaint and their motion for preliminary injunction, plaintiffs predicted that the prospect of being bound to Colorado would discourage out-of-state petition circulators from participating in petition campaigns in Colorado.  Plaintiffs also complain that these provisions presume, in a way that is done in no other area of the law, that criminal activity will occur.  Plaintiffs contend that these provisions are not narrowly tailored to the state's purported interest in deterring circulator fraud because there are other ways of determining signature validity and because criminal statutes already cover fraudulent behavior.

The Court concludes that the challenged requirements in § 1-40-111(2)(a) and § 1-40-111(3)(a) do not impose a severe burden on plaintiffs' speech.  They impose content-neutral requirements directed at keeping elections fair, honest, and orderly. Plaintiffs have failed to demonstrate that the requirements in these two provisions would, in fact, discourage participation by professional circulators or others in the petition gathering process.  Instead, plaintiffs' own witnesses indicated that appearing,

10

as the statute allows, by telephone would not discourage circulator participation. Therefore, the balancing test applies.

The state has an important interest in providing a method of testing the legitimacy of the signatures gathered. The state also has an interest in avoiding the disenfranchisement that could attend the wholesale invalidation of signatures on a disputed petition. The power to recall a petition circulator who is no longer present in the state allows for a potential alternative to the invalidation of the petition. Therefore, the state's interest outweighs the minimal burden imposed by these state statutes.

The Court notes that, even under strict scrutiny, it is not clear that plaintiffs would prevail. The Tenth Circuit in the *Yes on Term Limits* case suggested that a scheme similar to the one instituted by § 1-40-111(2)(a) and § 1-40-111(3)(a) would represent a narrowly tailored, and ostensibly permissible, approach to dealing with issues of fraud and the troubles with receiving testimony from out-of-state petition circulators once a challenge arose. *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008) ("Therefore, requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option that Oklahoma has failed to prove would be ineffective.").

The state needs to be able to ascertain the validity of signatures on petitions in order to maintain the integrity of the election process. The Court disagrees with plaintiffs that this result could be satisfactorily achieved by contacting each individual petition signer or through the imposition of criminal penalties on fraud. The logistics of such an approach alone make it impractical. *Cf. American Constitutional Law Found.*, 120 F.3d at 1098 ("To subject every petition regulation to exacting scrutiny would tie

11

Colorado's hands in seeking to assure equitable and efficient elections on ballot issues."). Furthermore, questions of validity go beyond what a signer of a petition may be able to offer. Relying solely on the testimony of a signer could seriously undermine the state's interest in maintaining the integrity of the process. Consequently, the Court concludes that plaintiffs are unlikely to succeed on the merits of their third claim for relief.

The Court also finds that plaintiffs are unable to establish a likelihood of irreparable harm from the requirements imposed by § 1-40-111(2)(a) and § 1-40-111(3)(a). Plaintiffs offered no evidence that their ability to engage in the petition process would be noticeably impinged by the requirement that petition circulators make themselves temporarily available to respond to future challenges to the petitions they gathered.

The Court also concludes that the balance of the equities and the public interest tilts in favor of the state on this claim. The state's important regulatory interests outweigh plaintiffs' perceived, yet unsubstantiated, fear that their ability to engage in the petition process will be affected. Therefore, the Court will not preliminarily enjoin the enforcement of the provisions of Colorado Revised Statutes § 1-40-111(2)(a) and § 1-40-111(3)(a) challenged in plaintiffs' third claim.

### E. Fourth Claim for Relief

Plaintiffs' fourth claim for relief alleges that Colorado Revised Statutes § 1-40-112(3) violates the free speech protections of the First Amendment. This statute states:

The secretary of state shall develop circulator training programs for paid and volunteer circulators. Such programs shall be conducted in the broadest, most cost-effective manner available to the secretary of state, including but not limited to training sessions for persons associated with the proponents or a petition entity, as defined in section 1-40-135(1), and by electronic and remote access. The proponents of an initiative petition or the representatives of a petition entity shall inform paid and volunteer circulators of the availability of these training programs as one manner of complying with the requirement set forth in the circulator's affidavit that a circulator read and understand the laws pertaining to petition circulation.

Colo. Rev. Stat. § 1-40-112(3) (2010).

Plaintiffs contend that the state-run training program for people engaged in the petitioning process is mandatory and burdensome. Second Am. Compl. [Docket No. 47] ¶¶ 72-75. According to plaintiffs, this section "imposes an intolerable burden on free speech by forcing petition circulators to partake of government-run training, and by reducing the number of circulators who are willing to circulate petitions." Pls.' Br. in Supp. of Mot. for Preliminary Inj. [Docket No. 16] at 6.

However, the literal language of this section does not require petition circulators to attend the government-run training. It merely requires proponents of an initiative petition or the representatives of a petition entity to "inform paid and volunteer circulators of the availability of these training programs" and requires the state to provide a means by which potential circulators could become apprised of the laws and regulations with which they must comply.

The only requirement regarding circulators even implicated by this section is the reference to the requirement "set forth in the circulator's affidavit that a circulator read and understand the laws pertaining to petition circulation." Plaintiffs do not appear to challenge this requirement or the portion of the statutory section which imposes this

requirement, Colorado Revised Statutes § 1-40-111(2)(a) ("To each petition section shall be attached a signed, notarized, and dated affidavit executed by the person who circulated the petition section, which shall include his or her printed name, the address at which he or she resides, including the street name and number, the city or town, the county, and the date he or she signed the affidavit; *that he or she has read and understands the laws governing the circulation of petitions* . . . .").

Regardless of the level of scrutiny applied to § 1-40-112(3) (2010), because this subsection does not actually impose the requirement plaintiffs contend, plaintiffs have failed to show a likelihood a success on their fourth claim for relief.

Because of their failure to demonstrate any irreparable harm stemming from § 1-40-112(3), plaintiffs have failed to satisfy the second requirement for preliminary relief. Finally, there is no indication of equities or a public interest which would support enjoining this provision of Colorado law. As a result, the Court will not preliminarily enjoin the enforcement of Colorado Revised Statutes § 1-40-112(3).

### F.  Sixth Claim for Relief

Plaintiffs' sixth claim for relief alleges that Colorado Revised Statutes § 1-40-117(3)(b) violates the free speech protections of the First Amendment and the due process protections of the Fourteenth Amendment by improperly amending the Colorado Constitution by legislative act. According to § 1-40-117(3)(b):

> No addendum offered as a cure shall be considered unless the addendum conforms to requirements for petitions outlined in sections 1-40-110, 1-40-111, and 1-40-113, and unless the addendum is filed with the secretary of state within the fifteen-day period after the insufficiency is declared and unless filed with the secretary of state no later than three months and three weeks before the election at which the initiative petition is to be voted on.

Plaintiffs claim that the three-month-and-three-week deadline is contrary to the Colorado Constitution which states that "[i]nitiative petitions for state legislation and amendments to the constitution, in such form as may be prescribed pursuant to law, shall be addressed to and filed with the secretary of state at least three months before the general election at which they are to be voted upon." Colo. Const. art. V, §1(2).

This is another instance where plaintiffs' motion for preliminary injunction exceeds the scope of their complaint. While the amended complaint only references § 1-40-117(3)(b), the motion for preliminary injunction appears to challenge Colorado Revised Statutes § 1-40-107(5) and § 1-40-108(1). The Court will not address the latter two statutes due, in part, to this deficiency. The bigger problem, however, is that review of any of the provisions' compliance with the Colorado Constitution is inappropriate, as explained below.

Although plaintiffs' theory of relief underlying their sixth claim was at first unclear, they have since clarified that they only allege a violation of federal law, namely, the unlawful deprivation of a liberty interest in violation of the Fourteenth Amendment of the United States Constitution. *See generally* Pls.' Br. Pursuant to June 2, 2010 Order [Docket No. 59]. The Court concludes that plaintiffs have failed to establish a likelihood of success on the merits of this claim. For the reasons stated in defendant's supplemental brief, *see* Secretary's Supplemental Br. Regarding the Court's Subject Matter Jurisdiction over Count VI [Docket No. 58], the Court concludes that its jurisdiction over plaintiffs' sixth claim is in serious doubt. Furthermore, the Court also

15

agrees with defendant that, even if jurisdiction could be established, abstention on this claim would be in order.

"*Pullman* abstention is appropriate when: (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law would hinder important state law policies." *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118-19 (10th Cir. 2008) (quotation marks and omission marks omitted). Each of these factors is met in the present case. Furthermore, defendant recently informed the Court that a state-court challenge regarding this very issue is underway. *See* Secretary's Status Report & Unopposed Mot. for Forthwith Ruling on Pls.' First & Second Claims for Relief [Docket No. 71] ¶ 13. Therefore, state-court review of this matter with state appellate review has already been initiated and a ruling from this Court could create potentially conflicting obligations on the defendant. As a result, it appears to be appropriate for the Court to abstain from deciding the merits of this claim.

However, because of the expedited and preliminary nature of the present motion, the Court leaves for another day a definitive ruling on the jurisdiction and abstention questions in connection with plaintiffs' sixth claim for relief. The Court now concludes only that plaintiffs have failed to show a likelihood of success on the merits and, therefore, are not entitled to preliminary relief on their sixth claim.

In the absence of a likelihood of success on the merits, particularly where that absence is predicated on jurisdictional deficiencies, the Court sees no reason to engage in a discussion of the remaining three preliminary injunction factors.

16

**G.  Seventh Claim for Relief**

Plaintiffs' seventh claim for relief alleges that Colorado Revised Statutes §
1-40-118(2.5)(a) violates the free speech protections of the First Amendment.
According to § 1-40-118(2.5)(a):

> If a district court finds that there are invalid signatures or petition sections
> as a result of fraud committed by any person involved in petition
> circulation, the registered elector who instituted the proceedings may
> commence a civil action to recover reasonable attorney fees and costs
> from the person responsible for such invalid signatures or petition
> sections.

Plaintiffs argue that the phrase "the person responsible for such invalid
signatures or petition sections" is unconstitutionally vague.  Plaintiffs argue that "[t]his
provision substantially burdens speech by chilling persons from engaging in protected
first amendment activity for fear of incurring fines for conduct they neither participated in
nor condoned."  Pls.' Br. in Supp. of Mot. for Preliminary Inj. [Docket No. 16] at 8.  This
fear is apparently based on the potential that petition organizers would face respondeat
superior liability for the wrongful acts of petition circulators.

"A statute is unconstitutionally vague for one of two reasons: it either 'fails to
provide people of ordinary intelligence a reasonable opportunity to understand what
conduct it prohibits'; or it 'authorizes or even encourages arbitrary and discriminatory
enforcement.'"  *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006).
To prevail on a facial vagueness challenge, "a party must show, at a minimum, that the
challenged law would be vague in the vast majority of its applications; that is, that
'vagueness permeates the text of the law.'"  *Doctor John's, Inc.*, 465 F.3d at 1157
(quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999)).  The plaintiffs in this case

thus far have failed to meet their burden in establishing that this statute is unconstitutionally vague.

Furthermore, only one of the plaintiffs, Jon Caldara, is presently engaged in attempting to get an initiative on the ballot. In his testimony, he did not cite § 1-40-118(2.5)(a) as impacting in any way his decision to proceed in this matter. No other plaintiff claimed in a convincing way to be discouraged from participating in the initiative process by this provision. Therefore, the evidence presented thus far shows that § 1-40-118(2.5)(a) constitutes, at most, a minimal burden on speech. This burden is sufficiently outbalanced by the state's important interest in protecting the integrity of elections by deterring fraud and permitting third-party involvement in the verification process. Therefore, plaintiffs' likelihood of success on the merits of this claim is uncertain at this point.

Based on the same evidence, or lack thereof, plaintiffs failed to establish that there is a likelihood of irreparable harm from the continued enforcement of this statute. Plaintiffs also failed to identify equitable considerations or a public interest which would justify the preliminary enjoining of enforcement of § 1-40-118(2.5)(a). Therefore, the plaintiffs have failed to establish that it is necessary for the Court to shortcut the normal litigation process by issuing a preliminary injunction on this claim.

### H.  Eighth Claim for Relief

Plaintiffs' eighth claim for relief alleges that Colorado Revised Statutes § 1-40-135(2)(a) and § 1-40-135(2)(c) violate the free speech protections of the First Amendment. According to § 1-40-135(2)(a):

It is unlawful for any petition entity to provide compensation to a circulator to circulate a petition without first obtaining a license therefor from the secretary of state. The secretary of state may deny a license if he or she finds that the petition entity or any of its principals have been found, in a judicial or administrative proceeding, to have violated the petition laws of Colorado or any other state and such violation involves authorizing or knowingly permitting any of the acts set forth in paragraph (c) of this subsection (2), excluding subparagraph (V) of said paragraph (c). The secretary of state shall deny a license:

    (I)    Unless the petition entity agrees that it shall not pay a circulator more than twenty percent of his or her compensation on a per signature or per petition basis; or

    (II)    If no current representative of the petition entity has completed the training related to potential fraudulent activities in petition circulation, as established by the secretary of state, pursuant to section 1-40-112(3).

Section 1-40-135(2)(c) states:

The secretary of state shall revoke the petition entity license if, at any time after receiving a license, a petition entity is determined to no longer be in compliance with the requirements set forth in paragraph (a) of this subsection (2) or if the petition entity authorized or knowingly permitted:

    (I)    Forgery of a registered elector's signature;

    (II)    Circulation of a petition section, in whole or part, by anyone other than the circulator who signs the affidavit attached to the petition section;

    (III)    Use of a false circulator name or address in the affidavit;

    (IV)    Payment of money or other things of value to any person for the purpose of inducing the person to sign or withdraw his or her name from the petition;

    (V)    Payment to a circulator of more than twenty percent of his or her compensation on a per signature or per petition section basis; or

    (VI)    A notary public's notarization of a petition section outside of the presence of the circulator or without the production of

the required identification for notarization of a petition section.

As discussed earlier, the Court's June 11, 2010 order enjoined defendant from enforcing the portions of these sections of the law that deal with compensation of petition circulators as limited by Colorado Revised Statutes § 1-40-112(4). Plaintiffs also challenge the licensing and training requirements as they pertain to petition entities.

Plaintiffs have not established how the licensing and training rules burden speech. The requirements do not restrict the amount or type of speech that may be distributed. They merely require training on the laws related to distribution of petitions. The testimony presented in the hearings on this motion indicated that the petition entities identified as working in Colorado had completed the training requirement, received a license, and reported little trouble in so doing.

Therefore, on the present record, the Court concludes that § 1-40-135(2)(a) and § 1-40-135(2)(c) impose the type of minimal burden which must pass only the balancing test. Under this standard, the Court concludes that the state's interest in preserving the integrity of the elections process by ensuring that the supervising entities are kept abreast of relevant legal constraints and obligations outweighs the minimal burden imposed by § 1-40-135(2)(a) and § 1-40-135(2)(c).

Plaintiffs also failed to show that they would suffer irreparable harm in the near term from these sections or that equity or public policy requires a preliminary halting of the enforcement of these laws. Therefore, the Court will not preliminarily enjoin the enforcement of the remaining portions of § 1-40-135(2)(a) and § 1-40-135(2)(c).

**I.  Ninth Claim for Relief**

Plaintiffs' ninth claim for relief alleges that Colorado Revised Statutes §

1-40-121(1) violates the free speech protections of the First Amendment.  Pursuant to §

1-40-121(1):

> The proponents of the petition or an issue committee acting on behalf of
> the proponents shall file with the official who receives filings under the
> "Fair Campaign Practices Act", article 45 of this title, for the election a
> report stating the dates of circulation by all circulators who were paid to
> circulate a section of the petition, the total hours for which each circulator
> was paid to circulate a section of the petition, and the gross amount of
> wages paid for such hours.  The filing shall be made at the same time the
> petition is filed with the secretary of state.  A payment made to a circulator
> is an expenditure under article 45 of this title.

Similar to § 1-40-135(2)(a) and § 1-40-135(2)(c), the Court enjoined enforcement of the

provisions of § 1-40-121(1) that would be used to enforce the limitations on circulator

compensation set forth in Colorado Revised Statutes § 1-40-112(4).  Plaintiffs also

challenge § 1-40-121(1) by arguing that it "burdens free speech by increasing the cost

of circulating petitions and reducing the number of circulators and petitioners willing to

engage in the protected activity."  Second Am. Compl. ¶ 103.  However, plaintiffs failed

to expound on this argument in their briefs or at the hearings on this motion and, as a

result, failed to prove this assertion.

In *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 203-

04 (1999), the Supreme Court struck down a Colorado statute which required the

reporting of the names, addresses, and the amounts paid to individual petition

circulators under a strict scrutiny analysis.  The Court in *Buckley* based its decision, in

large part, on the loss of anonymity experienced by paid circulators, which was not

experienced by volunteer circulators. *Buckley*, 525 U.S. at 204. The Court was less

sympathetic to the loss of anonymity that is felt by those who fund petition campaigns.

*See Buckley*, 525 U.S. at 202-03. The *Buckley* Court cited a previous opinion, *Buckley*

*v. Valeo*, 424 U.S. 1 (1976), which upheld campaign disclosure rules in the interests of

"aiding electors in evaluating those who seek their vote" and "deter[ring] actual

corruption and avoid[ing] the appearance of corruption by exposing large contributions

and expenditures to the light of publicity." *Buckley*, 525 U.S. at 202. In fact, the

Supreme Court in *Buckley v. American Constitutional Law Foundation, Inc.* held that

the "[d]isclosure of the names of initiative sponsors, and of the amounts they have

spent gathering support for their initiatives, responds to [a] substantial state interest."

525 U.S. at 202-03.

　　　As a result, the Court concludes that plaintiffs have failed to show that it is likely

that they will succeed on the merits of the remaining portions of their ninth claim for

relief. Furthermore, plaintiffs have made no showing that they will suffer irreparable

harm if a preliminary injunction does not enter on the remaining portions of §

1-40-121(1) or that equity or public policy requires such an injunction. Therefore, the

Court will not preliminarily enjoin the enforcement of the remaining portions of §

1-40-121(1).

### J.  Tenth Claim for Relief

　　　Plaintiffs' tenth claim for relief alleges that Colorado Revised Statutes §

1-40-135(3)(a) violates the free speech protections of the First Amendment. According

to § 1-40-135(3)(a):

Any procedures by which alleged violations involving petition entities are heard and adjudicated shall be governed by the "State Administrative Procedure Act", article 4 of title 24, C.R.S. If a complaint is filed with the secretary of state pursuant to section 1-40-132(1) alleging that a petition entity was not licensed when it compensated any circulator, the secretary may use information that the entity is required to produce pursuant to section 1-40-121(1) and any other information to which the secretary may reasonably gain access, including documentation produced pursuant to paragraph (b) of subsection (2) of this section, at a hearing. After a hearing is held, if a violation is determined to have occurred, such petition entity shall be fined by the secretary in an amount not to exceed one hundred dollars per circulator for each day that the named individual or individuals circulated petition sections on behalf of the unlicensed petition entity. If the secretary finds that a petition entity violated a provision of paragraph (c) of subsection (2) of this section, the secretary shall revoke the entity's license for not less than ninety days or more than one hundred eighty days. Upon finding any subsequent violation of a provision of paragraph (c) of subsection (2) of this section, the secretary shall revoke the petition entity's license for not less than one hundred eighty days or more than one year. The secretary shall consider all circumstances surrounding the violations in fixing the length of the revocations.

According to plaintiffs, this section of the Act "imposes heavy penalties for unlicensed circulation of initiative petitions, while conditioning licensing on compliance with the Act's unconstitutional statutory provisions referenced above." Pls.' Br. in Supp. of Mot. for Preliminary Inj. at 9. These penalties purportedly "chill Plaintiffs from exercising their rights under the First Amendment . . . ." Pls.' Br. in Supp. of Mot. for Preliminary Inj. at 9.

The Court also resolved this claim in part with its June 11, 2010 order. Plaintiffs will no longer be chilled by sections of the law which the Court has thus far enjoined. To the extent that they believe that § 1-40-135(3)(a) impermissibly chills speech based on other provisions, plaintiffs have failed to show how. They have also failed to show that they will suffer irreparable harm as a result of the remaining provisions if a preliminary injunction does not enter or how equity or public policy requires such an

injunction.  Therefore, the Court will not preliminarily enjoin the enforcement of the remaining portions of § 1-40-135(3)(a).

## III. CONCLUSION

Based on the foregoing, it is

**ORDERED** that the portions of plaintiffs' motion for preliminary injunction [Docket No. 15] on which the Court previously reserved ruling, are GRANTED in part and DENIED in part.  Defendant Bernie Buescher is ENJOINED AND RESTRAINED from enforcing the portions of Colorado Revised Statutes § 1-40-112(1), § 1-40-111(2)(a), and § 1-40-111(2)(b)(I)(C) which require petition circulators to be residents of the State of Colorado.  The motion is DENIED in all other respects.  It is further

**ORDERED** that this preliminary injunction shall apply to the following individuals who receive actual notice of it by personal service or otherwise: Defendant Buescher's officers, agents, servants, employees, and attorneys; other persons who are in active concert or participation with defendant Buescher or with his officers, agents, servants, employees, or attorneys.  It is further

**ORDERED** that this preliminary injunction shall remain in effect until the conclusion of a trial on the merits in this case or until otherwise amended by the Court. It is further

**ORDERED** that, given the nature of the injunction in this order and the difficulty in quantifying an amount of potential costs and damages should it later be determined that any party is wrongfully enjoined or restrained under this order, the Court will not require the plaintiffs to post a bond pursuant to Fed. R. Civ. P. 65(c).

DATED August 13, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge