IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00609-PAB-MEH

THE INDEPENDENCE INSTITUTE, *et al*.

    Plaintiffs,

v.

SCOTT GESSLER, in his official capacity as Colorado Secretary of State,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Exclude Testimony of Edward Agazarm [Docket No. 175] filed by defendant Scott Gessler in his official capacity as the Secretary of State for the State of Colorado. Defendant seeks to exclude Mr. Agazarm's testimony with respect to two opinions: (1) the effect of Oregon's Measure 26 on ballot initiatives; and (2) the economic impact the ban of a pay-per-signature compensation scheme will have on ballot initiatives in the State of Colorado. Docket No. 175 at 2. The motion is fully briefed and ripe for resolution.

**I.  FEDERAL RULE OF EVIDENCE 702**

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).

Although it is not always a straightforward exercise to disaggregate an expert's method and conclusion, when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). When examining an expert's method, however, the inquiry should not be aimed at the

"exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While the proponents of the challenged testimony have the burden of establishing admissibility, their proffer is tested against the standard of reliability, not correctness; they need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology

3

was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

## II. THE AGAZARM OPINIONS

Under Rule 702, reliance on a witness' qualifications is no longer sufficient foundation to admit expert testimony. *Crabbe*, 556 F. Supp. 2d at 1220. Even if a witness is qualified to provide expert testimony, the proponent of the witness still has the burden of showing that the expert's testimony is reliable and admissible. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001). In this case, defendant does not challenge Mr. Agazarm's qualifications to testify with regard to either opinion. Docket No. 175 at 4. Accordingly, the Court will focus its analysis on the reliability and admissibility of Mr. Agazarm's opinions.

### A. Measure 26

Measure 26 is a law that regulates the ballot initiative process in the State of Oregon. Docket No. 212-1 at 45 (Agazarm Dep. 179:4-11). Mr. Agazarm's proposed testimony relates to his opinion that Measure 26 failed to control fraud and forgery in the collection of signatures for statewide ballot initiatives. Docket No. 175-3 at 1. Specifically, Mr. Agazarm's primary opinion is that the Measure 26 was "a complete failure [and] no aspect of the [ballot initiative] process has improved" as a result of its implementation. *Id*. Mr. Agazarm bases his opinion that Measure 26 was a complete

failure on four underlying premises: (1) the average rate of invalid signatures has skyrocketed; (2) the number of forgery and fraud complaints has risen steadily; (3) criminal prosecutions for forgery of petition signatures continues to climb; and (4) the average cost to qualify an initiative has tripled.  Docket No. 175-2 at 1; *see also* Docket No. 175-3.  Mr. Agazarm drew his conclusions from data gathered from Oregon's Secretary of State.  Docket No. 175-4 at 2.

### *1. Average Rate of Invalid Petition Signatures*

Mr. Agazarm offers the opinion that, after the passage of Measure 26, the average rate of invalid signatures collected for statewide initiatives went from 17% in 1998 to 30% in 2006.  Docket No. 175-3 at 1.  Based on this data, Mr. Agazarm opines that, instead of reducing the number of invalid signatures, Measure 26 "nearly doubled" the average rate of invalid signatures.  Docket No. 175-2 at 1.

However, during his deposition, Mr. Agazarm acknowledged that his reported numbers did not include the average rate of invalid signatures for election cycles before and after the passage of Measure 26.  Docket No. 212-1 at 43.  In fact, the averages for this time period show that the rate of invalid signatures did not skyrocket after the passage of Measure 26, but rather remained constant.  *See id.* at 45-46 (Agazarm Dep. 180:12-182:25) (the average rate of invalid signatures was 27% in 2000, 31% in 2002, 28% in 2004, and 30% in 2006).  Mr. Agazarm was also unable to explain the discrepancy between the actual averages and his finding that the rate of invalid signatures nearly doubled.  *See* Docket No. 212-1 at 46 (Agazarm Dep. 183:6-19).

Given Mr. Agazarm's failure to explain his conclusions and because the actual averages call into question the reliability of this opinion, the Court finds that Mr.

Agazarm's opinion that the average rate of invalid signatures "nearly doubled" is inadmissible. This opinion does not satisfy the strict standard for reliability under Rule 702. *See Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (emphasis in original).

### *2. Forgery and Fraud Rose Under Measure 26*

Mr. Agazarm's second opinion relates to the rise of formal complaints for fraud or forgery in the collection of signatures. *See* Docket No. 175-3 at 1. Mr. Agazarm opines that, because more complaints of forgery or fraud were filed in the 2004 election cycle than in the 2000 election cycle, Measure 26 was ineffective against signature petition fraud. *Id*.

However, Mr. Agazarm is unable to explain how a rise in complaints for fraud or forgery supports the opinion that Measure 26 was a complete failure. In fact, Mr. Agazarm noted that "[t]he number of [criminal] convictions" would be a better indicator for fraud because "the number of complaints are often politically generated." Docket No. 212-1 at 29 (Agazarm Dep. 113:6-7). Given that Mr. Agazarm concedes that some complaints about alleged fraud may be politically motivated, Docket No. 212-1 at 30 (Agazarm Dep. 118:2-14), the significance of the rising number of complaints is unclear. The tenuous connection between alleged fraud and Measure 26 gives little support for Mr. Agazarm's overall belief that Measure 26 was a complete failure. *See In re Trasylol Prods. Liability Litigation*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (a

proffered expert that merely "regurgitates" facts and then reaches conclusory opinions assumes the role of advocate and invades the province of the trier of fact).

### 3. *Criminal Prosecutions of Fraud Rose Under Measure 26*

Mr. Agazarm believes that the criminal prosecution of signature petition forgery has risen since the passage of Measure 26. Docket No. 175-3 at 1. This opinion is based on criminal prosecution data from the years following the passage of Measure 26. *Id*. Mr. Agazarm acknowledges that this data does not include the rate of criminal convictions before the passage of the law. Docket No. 212-1 at 43 (Agazarm Dep. 169:17-21). Without a basis for comparison, the evidence of criminal prosecutions for fraud after the passage of Measure 26 is irrelevant because it does not aid the trier of fact. *See Daubert*, 43 F.3d at 1315 (court must ensure that the expert opinion logically advances a material aspect of the case); *Fanning v. Sitton Motor Lines, Inc.,* 2010 WL 4261476, at *7 (D. Kan. March 10, 2010) ("to satisfy the strictures of *Daubert*, an expert may not based his or her testimony upon assumptions that are not supported by the evidence").

### 4. *The Average Costs of Signature Collection Rose*

Finally, Mr. Agazarm claims that the cost of qualifying petitions for ballots in Oregon rose from $149,335 before Measure 26 to $473,126 after the passage of the law. Docket No. 175-2. To arrive at these figures, Mr. Agazarm relied on campaign finance reports from Oregon's Secretary of State. Docket No. 221-1 at 51 (Agazarm Dep. 201:20-25). However, Mr. Agazarm failed to maintain records of the data used to reach this opinion and the data is no longer available because the retention period for

campaign finance reports is only six years. Docket No. 212-1 at 51 (Agazarm Dep. 202:19-25). Given that Mr. Agazarm cannot produce data upon which he based his opinion, the Court finds that this opinion is also inadmissible. When the witness' proposed testimony extends beyond the facts of the case personally known to him, the witness' opinion must be disclosed within the procedures required by Rule 26(a)(2)(B). *See Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 477 (D. Kan. 2001). Mr. Agazarm's failure to maintain his records deprives the Court of the ability to perform its gatekeeping functions since the Court is unable to test Mr. Agazarm's methodology or determine whether the underlying data is reliable. *103 Investors I*, 470 F.3d at 990. Moreover, the Court is not required to take an expert's word that the methodology is sound. *See* Fed. R. Evid. 702, Adv. Comm. Note (2000 Am.) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'")

The Court concludes that Mr. Agazarm's opinion that the "Oregon law [was] a complete failure" does not meet the Rule 702 standard and is therefore inadmissible. *See Joiner*, 522 U.S. at 146 (an expert opinion is not admissible if an impermissible gap exists between the premises and the conclusion). The flaws in the data Mr. Agazarm provides to support his underlying premises render his primary opinion unreliable. Its introduction at trial would not materially assist the trier of fact. *See Borel v. Trek Bicycle Corp.*, No. 09-cv-01312-ZLW-MJW, 2010 WL 2682118, at *3 (D. Colo. July 1, 2010) (introduction of expert's opinion at trial would not materially assist the trier of fact because the court is unable to guarantee the reliability of expert's theories).

### B.   The Effect of H.B. 1326 on Ballot Petitions

Defendant seeks to exclude Mr. Agazarm's testimony with regard to the potential economic effect of H.B. 1326 on ballot initiatives in Colorado. Docket No. 175 at 2. Defendant argues that, because Mr. Agazarm has only worked on a single campaign with a pay-per-hour compensation scheme, he may not reliably opine about the effects of H.B. 1326. *Id*. at 4. Additionally, defendant contends that, although Mr. Agazarm has worked on ballot petitions in several states, he has limited experience with ballot petition practices in the State of Colorado. *Id*. at 2. Defendant claims that the combination of Mr. Agazarm's lack of experience in Colorado and his sole experience running a pay-per-hour petition drive undermines the reliability of his proffered opinion. *Id*. at 5. However, defendant concedes that Mr. Agazarm does not lack "the necessary qualifications due to his specific lack of experience with H.B. 09-1326." Docket No. 222 at 5.

In response, plaintiffs argue that, although Mr. Agazarm has conducted few pay-per-hour petition drives, he has over 19 years of experience in the petitioning industry. Docket No. 212 at 1. Additionally, plaintiffs contend that Mr. Agazarm's experience running petition drives in various states under both a pay-per-hour and a pay-per-signature system qualifies him to opine about the impact that H.B. 1326 may have in Colorado. *Id*. at 6. Moreover, plaintiffs argue that Mr. Agazarm's failure to conduct a petition drive under the hybrid system provided for under H.B. 1326 cannot exclude his testimony because no one has ever conducted a petition drive under the proposed statute. *Id*. at 11.

The Court finds that Mr. Agazarm may opine about the potential economic impact of H.B. 1326.  Mr. Agazarm's 19 years of working in the petitioning industry, which includes experience conducting pay-per-hour petition drives, provides a sufficient foundation based on actual experience for him to express opinions under Rule 702. Moreover, since defendant readily acknowledges that Mr. Agazarm knows the "ins and outs of pay-per-signature campaigns," Docket No. 175 at 4, these experiences allow him to provide some guidance about the impact that a partial pay-per-signature ban could have on statewide ballot initiatives.  The Court finds that running a ballot petition drive in Colorado is not a prerequisite to opining about the potential impact of H.B. 1326 and that, because no experts have conducted a ballot petition drive under a hybrid system, Mr. Agazarm's otherwise relevant experience could provide useful information for the trier of fact.

## III.  CONCLUSION

Accordingly, it is

**ORDERED** that the Secretary's Motion to Exclude the Testimony of Edward Agazarm Pursuant to F.R.E. 702 [Docket No. 175] is **GRANTED** in part and **DENIED** in part.  Pursuant to Rule 702, Mr. Agazarm may not offer opinions regarding the effect Measure 26 has had on ballot initiatives in the State of Oregon.

DATED March 21, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge