IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00609-PAB-MEH

THE INDEPENDENCE INSTITUTE, *et al*.

      Plaintiffs,

v.

SCOTT GESSLER, in his official capacity as Colorado Secretary of State,

      Defendant.

_____

## ORDER

_____

      This matter is before the Court on the Motion to Exclude Testimony of Michael

Arno [Docket No. 218] filed by defendant Scott Gessler in his official capacity as the

Secretary of State for the State of Colorado.  Pursuant to Rule 702 of the Federal Rules

of Evidence, defendant seeks to preclude Mr. Arno from offering opinions on various

topics.  The motion is fully briefed and ripe for resolution.

## I.  FEDERAL RULE OF EVIDENCE 702

      Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if: (a)
> the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is the product
> of reliable principles and methods; and (d) the expert has reliably applied the
> principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an

expert be qualified based upon knowledge, skill, experience, training, or education to

give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the specific proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).

Although it is not always a straightforward exercise to disaggregate an expert's method and conclusion, when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an

expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While the proponents of the challenged testimony have the burden of establishing admissibility, their proffer is tested against the standard of reliability, not correctness; they need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

3

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

## II.  ANALYSIS

Defendant does not challenge Mr. Arno's qualifications to testify with regard to pay-per-signature petition drives.  Docket No. 218 at 2.  Defendant does, however, challenge Mr. Arno's qualifications to provide opinions with regard to pay-per-hour signature petition drives.  *Id*.  Additionally, defendant seeks to exclude Mr. Arno's proffered opinions regarding: (1) the management of petition drives that compensate circulators on a pay-per-hour scheme; (2) the management of petition drives that compensate circulators based on a hybrid pay scheme; (3) the field of handwriting analysis or forgery detection; and (4) the rebuttal of expert opinion regarding labor economics and statistics.  Docket No. 218 at 2-3.

Before addressing defendant's arguments, the Court notes that under a Rule 702 analysis, a showing that an expert is qualified in a particular field does not automatically lead to the admission of his testimony.  *Crabbe*, 556 F. Supp. 2d at 1221. On the contrary, Rule 702 focuses on the admissibility of expert opinions and whether those opinions are based upon reliable methodology.  *Id*.  While a witness may satisfy the minimum requirements to qualify as an expert, his or her level of expertise may nevertheless affect the reliability of the expert's opinion.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).  Thus, even if an expert is qualified to express

4

an opinion on a given field or subject matter, the Court still has an independent duty to analyze whether the opinion proffered is reliable.

## A.  Waiver

Plaintiffs argue that, because defendant stipulated to Mr. Arno's qualifications during the preliminary injunction hearing, defendant is foreclosed from challenging Mr. Arno's qualifications.  Docket No. 228 at 5.  According to defendant, plaintiffs disclosed Mr. Arno two days before the start of the preliminary injunction hearing.  The fact that defendant chose not to challenge Mr. Arno's qualifications on short notice at a preliminary court hearing does not estop defendant from challenging Mr. Arno's qualifications after discovery for purposes of a trial.

## B.  Mr. Arno's Opinions

### 1.  Pay-per-hour Drives Double the Costs of Petition Qualification and the Management of Petition Drives under Either a Pay-per-hour Scheme or a Hybrid Payment Scheme

Defendant seeks to exclude Mr. Arno's testimony relating to the economic impact that Measure 26--an Oregon law regulating petition drives--had on proponents of ballot initiatives.  Docket No. 218 at 3-4.  Specifically, defendant seeks to exclude Mr. Arno's opinion that "requiring petition management firms to pay circulators per-hour instead of per-signature more than doubles the cost to proponents as a general rule."  Docket No. 237 at 7.[1]  Additionally, defendant seeks to exclude Mr. Arno's broader testimony with

---

[1]In his rebuttal opinion, Mr. Arno claims that he spent $538,000 to qualify a petition in Oregon after the passage of Measure 26, when under a pay-per-signature model it would have cost only $217,000.  Docket No. 218-4 at 2.  Based on this result, Mr. Arno concluded that pay-per-hour petition drives more than double the costs of qualifying a measure.  *Id.*

regard to: (1) the creation of accurate bids under a pay-per-hour scheme; (2) the creation and implementation of a pay scale under a pay-per-hour schedule; and (3) effective management of pay-per-hour drives.  Docket No. 218 at 2.  Defendant argues that, because Mr. Arno has only conducted two pay-per-hour signature petition drives, Mr. Arno is not qualified to offer the opinion and the opinion is unreliable.  *Id*. at 10.

In response, plaintiffs argue that, because Mr. Arno has "extensive experience" conducting petition drives under "both pay-by-hour and pay-by-signature" schemes and is "qualified to offer opinions about how Colorado's partial per-signature pay ban will impact" costs in Colorado.  Docket No. 228 at 8.

While it is true Mr. Arno has only conducted two petition drives with a pay-per-hour compensation scheme and there is no evidence in the record that Mr. Arno was involved in petition gathering activities in Oregon prior to the passage of Measure 26, the Court finds that Mr. Arno has sufficient experience to express opinions about the cost impact of an hourly compensation scheme.  Mr. Arno's extensive experience with pay-per-signature compensation schemes provides context rather than bias in assessing his experience in Oregon.  Docket No. 218-4 at 2.  The fact that Mr. Arno's bids in Oregon were based on a certain amount of guesswork does not call into question his methodology since Oregon was one of the first states to adopt an hourly compensation model and estimates regarding the cost of signature gathering were consequently speculative.

Defendant also argues that, because of his lack of experience, Mr. Arno may not testify about the likely effects of H.B. 1326.  Docket No. 218 at 2.  Defendant claims

that any opinion Mr. Arno formulated from two pay-per-hour signature petition drives is based on insufficient data and lack of experience.

In response, plaintiffs argue that "although there are some variances in state laws governing petition drives, one need not have recent experience in Colorado to qualify as an expert in the petition circulation business."  Docket No. 228 at 10. Plaintiffs assert that, because no other state has a hybrid system in place, plaintiffs would have no experts because "no one has circulated petitions under the challenged provisions."  Docket No. 228 at 9.

While it is true that Mr. Arno does not have experience with a hybrid compensation scheme such as that embodied in H.B. 1326, plaintiffs correctly point out that no one has such experience.  That fact does not disqualify Mr. Arno, who otherwise has extensive experience in petition gathering, from offering opinions based on his experience with both pay-per-signature and hourly compensation schemes, including opinions regarding the formation of bids and pay schemes.

### 2.  Mr. Arno's Testimony Regarding Forgery Detection

Defendant seeks to exclude Mr. Arno's testimony regarding Measure 26's impact on the rate or incidence of forged signatures.  Docket No. 237 at 9.  Specifically, defendant requests that the Court exclude Mr. Arno's opinion that "the rate or incident of forged signatures in the initiative process is low and [Mr. Arno] and his staff" can reliably detect forged signatures based on visual inspection.  *Id*. at 9.

In his deposition, Mr. Arno acknowledged that he does not have any handwriting analysis training, Docket No. 218-6 at 30 (Arno Dep. 282:19-21), and his company does not hire individuals with experience in handwriting analysis.  *Id*. at 31 (Arno Dep. 283:2-

3).  Mr. Arno also admitted that he has not tested his company's forgery results for accuracy since 2000.  *Id*. (Arno Dep. 283:21-25); *Id*. at 34 (Arno Dep. 291:20-25) ("I look at similarities and patterns.  That's what I look at.  That requires a glance.").  Mr. Arno's opinion that the rate or incidence of fraud is low in petition drives is based primarily on his staff's visual inspections of collected signatures, which are not cross-checked with official voter registration records.  *Id*. at 32 (Arno Dep. 329:10-14).

Mr. Arno's opinions regarding the rate or incidence of forged signatures and his firm's ability to detect forged signatures through visual inspection are unreliable because he and his staff have no formal training in the field of handwriting analysis, they are not certified by any professional organization, and there is no evidence that their results have recently been subjected to some process to determine accuracy.  *Cf. Am. Gen. Life & Accident Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1314 (N.D. Ga. 2008) (disqualifying a handwriting expert because his observations were not empirically tested and did not have an identified potential rate of error).  Moreover, Mr. Arno's opinion is not based on sufficient data or upon reliable methodology.  His representation that he and his staff are able to detect fraud is a conclusory statement that his opinions are reliable.  However, nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  *Joiner*, 522 U.S. at 146.  Thus, the Court will exclude such opinions.

### 3.  Labor Economics and Statistics

Defendant seeks to exclude Mr. Arno's testimony with regard to labor economics, compensation and incentive schemes, statistics, the application of scientific methodology to the social sciences, or econometrics.  Docket 218 at 3.  However, defendant fails to provide a specific opinion Mr. Arno provided on any of the aforementioned topics.  Given that Rule 702 focuses on opinions, defendant's failure to identify the opinions he challenges does not provide the Court with any guidance as to the possible nature of the witness' testimony.  *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.G. ("The motion shall identify with specificity each **opinion** the moving party seeks to exclude.") (emphasis in original).  Therefore, the Court denies defendant's motion to exclude Mr. Arno from testifying about labor economics and statistics for failure to object to specific opinions.

## III.  CONCLUSION

Accordingly, it is

**ORDERED** that the Secretary's Amended Motion to Exclude Testimony of Michael Arno Pursuant to F.R.E. 702 is **GRANTED** in part and **DENIED** in part as indicated in this Order.

DATED March 21, 2012.

BY THE COURT:

 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge