IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00609-PAB-MEH

THE INDEPENDENCE INSTITUTE, *et al*.

      Plaintiffs,

v.

SCOTT GESSLER, in his official capacity as Colorado Secretary of State,

      Defendant.

_____

## ORDER

_____

      This matter is before the Court on the Motion for Summary Judgment [Docket No. 143] filed by defendant Scott Gessler in his official capacity as Secretary of State for the State of Colorado. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

      In 2009, the Colorado General Assembly passed and the Governor signed into law House Bill 09-1326 ("H.B. 1326"), which is codified at Colo. Rev. Stat. §§ 1-40-101 *et seq*. The Colorado General Assembly enacted H.B. 1326 in order to protect and preserve the integrity of Colorado's initiative and referendum process. In enacting the statute, the General Assembly made the following findings regarding the initiative process:

        (I)    The initiative process relies upon the truthfulness of circulators who obtain the petition signatures to qualify a ballot issue for the statewide ballot and that during the 2008 general election, the honesty of many petition circulators was at issue because of practices that included: Using third parties to circulate petition sections, even though the third parties did not sign the circulator's affidavit, were not of legal age to act as circulators,

and were paid in cash to conceal their identities; providing false names or residential addresses in the circulator's affidavits, a practice that permits circulators to evade detection by persons challenging the secretary of state's sufficiency determination; circulating petition sections without even a rudimentary understanding of the legal requirements relating to petition circulation; and obtaining the signatures of persons who purported to notarize circulator affidavits, even though such persons were not legally authorized to act as notaries or administer the required oath;

(II)     The per signature compensation system used by many petition entities provides an incentive for circulators to collect as many signatures as possible, without regard for whether all petition signers are registered electors; and

(III)    Many petition circulator affidavits are thus executed without regard for specific requirements of law that are designed to assist in the prevention of fraud, abuse, and mistake in the initiative process.

Colo. Rev. Stat. § 1-40-101(2)(a) (2012).  The legislative findings of H.B. 1326 also include the following conclusions:

(I)      As a result of the problems identified in paragraphs (a) and (b) of this subsection (2), one or more ballot measures appeared on the statewide ballot at the 2008 general election even though significant numbers of the underlying petition signatures were obtained in direct violation of Colorado law and the accuracy of the secretary of state's determination of sufficiency could not be fully evaluated by the district court; and

(II)     For the initiative process to operate as an honest expression of the voters' reserved legislative power, it is essential that circulators truthfully verify all elements of their circulator affidavits and make themselves available to participate in challenges to the secretary of state's determination of petition sufficiency.

Colo. Rev. Stat. § 1-40-101(2)(c) (2012).

Plaintiffs are persons, organizations, and petition circulators involved in the initiative and referendum process in the State of Colorado.  Plaintiffs argue that certain provisions of H.B. 1326 are unconstitutional as they severely burden their rights under the First Amendment to the United States Constitution.  *See* Docket No. 47.

2

Specifically, Mason Tvert, co-founder and executive director of Safer Alternative For Enjoyable Recreation ("SAFER"), asserts that he has preliminary plans for introducing a statewide initiative in 2012 and the statute burdens his right to free speech.  Docket No. 47 at 5.  Additionally, Scott Lamm, president of Lamm Consulting, a Denver-based petition drive management company, plans to continue his active involvement in the petitioning process but "is chilled in doing so by provisions of [H.B. 1326]." *Id.* at 7.

In their second amended complaint, plaintiffs charge that the following portions of H.B. 1326 violate their First Amendment freedom of speech rights: (1) the provision banning non-residents from circulating petitions within the state of Colorado, § 1-40-112(1), § 1-40-111(2)(a); (2) the requirement that circulators provide a form of identification, § 1-40-111(2)(b)(I)(C); (3) the requirement that circulators agree to make themselves available in the event a protest to petition signatures is filed, § 1-40-111(2)(a), § 1-40-111(3)(a); (4) the requirement that a petition entity undergo state-mandated training prior to performing petition activities, § 1-40-112(3); (5) the partial ban of pay-per-signature compensation for circulators, § 1-40-112(4); (6) the requirement that petition entities return collected signatures to the Secretary of State three weeks and three months in advance of an election, § 1-40-117(3)(b); (7) the private enforcement and attorney's fees provision, § 1-40-118(2.5); (8) the requirement that petition entities obtain a license from the Secretary of State prior to providing payment to circulators, § 1-40-135(2)(a) and § 1-40-135(2)(c); (9) the requirement that proponents of a petition or an issue committee acting on behalf of proponents file a report stating the dates of circulation by all circulators who were paid on the petition, the total hours each circulator was paid to circulate a section of the petition, and the gross

3

amount of wages paid for such hours, § 1-40-121(1); and (10) the penalty provision, § 1-40-135(3)(a).  Docket No. 47 at 14-20.

On April 12, 2010, plaintiffs filed a Motion for a Preliminary Injunction [Docket No. 15] seeking to enjoin the Secretary from enforcing the contested provisions of H.B. 1326.  The Court held three hearings on plaintiffs' motion--on May 13, 2010 [Docket No. 42], on May 28, 2010 [Docket No. 54], and on June 2, 2010 [Docket No. 57].

On June 11, 2010, the Court issued an Order [Docket No. 60] enjoining the Secretary from enforcing § 1-40-112(4), § 1-40-135, and § 1-40-121 to the extent that those sections applied to the partial ban on pay-per-signature compensation.  Docket No. 60 at 37.  The Court found that, under either a strict scrutiny analysis or a balancing test, "the State ha[d] failed to demonstrate that its interests make it necessary to burden the plaintiff's rights in the way that § 1-40-112(4) has."  Docket No. 60 at 35.  On August 8, 2010, in a separate Order [Docket No. 72], the Court also enjoined the Secretary from enforcing portions of Colorado Revised Statutes § 1-40-112(1), § 1-40-111(2)(a), and § 1-40-112(2)(b)(I)(C), which banned non-resident circulators from circulating petitions in Colorado.  Docket No. 72 at 24.

In the present motion, the Secretary requests that the Court enter summary judgment [Docket No. 144] on eight of plaintiffs' ten claims for relief.  The Secretary also filed a motion to strike various portions of affidavits submitted by plaintiffs on the grounds that the submissions are irrelevant or lack adequate foundation [Docket No. 234].

4

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to the proper disposition of the claim.  *Wright v. Abbot Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense.  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1110 (D. Colo. 2002).  By contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).  The nonmoving party may not rest solely on the

allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III.  ANALYSIS

### A.  Initiative Process in Colorado

"The Colorado Constitution reserves to the people the power to enact laws and constitutional amendments by initiative, and to reject by referendum laws passed by the general assembly."  *Campbell v. Buckley*, 203 F.3d 738, 740 (10th Cir. 2000), *cert. denied*, 531 U.S. 823 (2000).  Article V, § 1(1) of the Colorado Constitution states that "the people reserve to themselves the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly and also reserve power at their own option to approve or reject at the polls any act or item, section, or part of any act of the general assembly."  An initiative to amend the Colorado Constitution may be placed on the ballot only where the proponent provides a petition "in such form as may be prescribed pursuant to law" with the required number of signatures of registered electors and does so at least three months before the general election.  Colo. Const. art. V, § 1(2).  The Colorado General Assembly is empowered to enact certain regulations regarding the initiative process based upon both the Colorado Constitution, *see American Constitutional Law Foundation, Inc. v. Meyer*, 120 F.3d 1092, 1096 (10th Cir. 1997) (citing *Committee for Better Health Care v. Meyer*, 830 P.2d 884, 893 (Colo. 1992); Colo. Const. art. V, § 1(2); Colo. Const. art. VII, § 11), and Article I, Section 4 of the United States

Constitution.  *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)).

### B.  Level of Scrutiny

The First Amendment, made applicable to the states via the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666 (1925), provides, "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment was "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."  *Meyer v. Grant*, 486 U.S. 414, 421 (1988) (citation omitted).  Plaintiffs in this case, like the initiative proponents in *Meyer*, "seek by petition to achieve political change in Colorado; their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment."  *Id*.  Plaintiffs rely on signature gatherers or circulators who play an important role in the initiative process as they are solely responsible for gathering the number of signatures required to place an issue on the statewide ballot.  *Am. Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1099 (10th Cir. 1997), *aff'd sub nom. Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999).  Because petition circulation involves "interactive communication concerning political change," this activity is usually considered "core political speech."  *Meyer*, 486 U.S. at 421-22.  As such, the importance of petition circulators has prompted courts to apply strict scrutiny where an election law severely restricts circulators' ability to gather signatures.  *See Meyer*, 486 U.S. at 414 (exclusion of all paid circulators); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 187 (1999) (exclusion of circulators not registered to vote).

Nevertheless, because "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes," *Buckley*, 525 U.S. at 187, Colorado's General Assembly has "the authority to adopt legislation designed to prevent fraud, mistake or other abuses in the petition process." *Campbell,* 203 F.3d at 741 (citation omitted).

When a state statute regulating the election process is challenged under the First Amendment, the court's first step is to ascertain which standard of review will apply to its provisions. *Id*. at 742. The analysis typically turns in large measure on whether the regulation at issue is subject to a balancing test or strict scrutiny. *Id*. Although predictability of decisions in election law is important, "[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Id*. at 745 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997)).

Generally, whether a regulation must face a balancing test or strict scrutiny depends on the severity of the burden the regulation places on speech. *See Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (describing the Supreme Court's flexible approach in similar First Amendment cases as a "sliding scale"). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358 (quotation marks omitted); *see American Constitutional Law Found.*, 120 F.3d at 1098 ("[T]he rigorousness of our

inquiry depends upon the extent to which the challenged law burdens plaintiffs' First and Fourteenth Amendment rights.").

Where a law appears on its face to regulate the initiative process, courts should engage in a searching inquiry to determine if, in regulating the process, a state has gone too far by instituting procedures which effectively limit the underlying speech. Therefore, the essential consideration is how severe a burden a particular regulation effectively places on the underlying speech. *See Timmons*, 520 U.S. at 358.

Rules which place a significant and substantial obstacle in an initiative proponent's way face strict scrutiny. An election law will face strict scrutiny where, for example, the evidence shows that it severely burdens speech due to restrictions on campaign expenditures, reductions in the available pool of circulators or other supporters, or that it seriously discourages participation by eliminating the anonymity of participants. In these cases, the state bears the burden of proving that the regulation is narrowly tailored to serve a compelling state interest. *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008).

At the same time, where the evidence shows that a law regulating the initiative process does not impose a severe burden on the underlying speech it need only pass a balancing test. This is because "there is a crucial difference between a law that has the 'inevitable effect' of reducing speech because it restricts or regulates speech, and a law that has the 'inevitable effect' of reducing speech because it makes particular speech less likely to succeed." *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1100 (10th Cir. 2006); *see also Campbell*, 203 F.3d at 743 ("Petitioner proceeds from the erroneous assumption that a law that imposes any burden upon the right to vote

must be subject to strict scrutiny. . . . [T]o subject every voting regulation to strict scrutiny . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently.").

Under the balancing test, a court must balance "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" with "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Campbell*, 203 F.3d at 742-43 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Timmons*, 520 U.S. at 358; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The Court must evaluate "the legitimacy and strength" of each of the State's purported interests; however, in doing so, the Court "also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."  *Campbell*, 203 F.3d at 743 (quoting *Anderson*, 460 U.S. at 789); *see also Timmons*, 520 U.S. at 358; *Burdick* ,504 U.S. at 434.  Although "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions," *Timmons*, 520 U.S. at 358, that determination is not automatic.

With these principles in mind, the Court will evaluate the burden imposed by each of the challenged provisions and apply the corresponding level of scrutiny.

### C.   First Claim for Relief

Plaintiffs' first claim for relief alleges that Colo. Rev. Stat. § 1-40-112(1) violates the free speech protections of the First Amendment.  Section 1-40-112(1) states that: "No person shall circulate a petition for an initiative or referendum measure unless the

person is a resident of the state, a citizen of the United States, and at least eighteen years of age at the time the petition is circulated."

On April 18, 2011, pursuant to the State Administrative Procedure Act, Colo. Rev. Stat. § 24-4-103, the Secretary amended the Colorado Secretary of State Election Rules via formal rule making and adopted Rule 15.3.2.  Docket No. 144 at 12.  Rule 15.3.2 states in relevant part:

> The petition circulator shall provide his or her permanent residence address as defined in paragraph (a) of this rule on the circulator affidavit. In addition to providing his or her permanent residence address, if the *circulator is not a permanent resident of Colorado* as described in section 1-2-102(1)(a)(i), C.R.S., and paragraph a of this rule, the circulator shall also provide the address in Colorado where he or she is temporarily living as of the date the affidavit is signed.
> . . .
>
> b. For the purposes of petition circulator residence address, a homeless circulator shall provide the address or location where he or she is living as of the date the affidavit is signed.

8 Colo. Code Regs. § 1505-1:15.3.2 (emphasis added).  Rule 15.3.2 allows non-residents to circulate petitions for an initiative or referendum as long as the circulator provides "his or her permanent address" and provides the address in Colorado where "he or she is temporarily living as of the date the affidavit is signed."  8 Colo. Code Regs. § 1505-1:15.3.2.

Plaintiffs argue that § 1-40-112(1) excludes non-residents from participating in petition activities within Colorado, which severely burdens the free speech rights of all non-residents.  Plaintiffs rely on *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008), which held that a blanket ban on non-resident circulators violated the First and Fourteenth Amendments to the United States Constitution.  *Id*. at 1031.

Additionally, plaintiffs challenge the legality of Rule 15.3.2, arguing that the Secretary lacks the authority to enact rules that are inconsistent with governing statutes.  Docket No. 164 at 17.  Moreover, plaintiffs claim that, because the Secretary retains the authority to amend the rule, plaintiffs are subject to an ongoing threat of enforcement. *Id*. at 19.

The Secretary does not contest the applicability of *Yes on Term Limits* to the facts of this case.  Instead, the Secretary responds that, via formal rulemaking, he has adopted a limiting construction of the two statutes that will "hew as closely as possible to the Colorado legislature's original intent."  Docket No. 144 at 12.  The Secretary claims that rules adopted pursuant to formal rulemaking have the force and effect of law.  *Id.*

Under Colorado law, where a statute contains plain, clear, and unambiguous language, a court does not resort to interpretive rules to construe its meaning.  *Carrara Place, Ltd. v. Arapahoe Cnty. Bd. of Equalization*, 761 P.2d 197, 202 (Colo. 1988).  A court's task is to give full effect to the legislative intent, *Skruch v. Highlands Ranch Metro. Dist. Nos. 3 & 4*, 107 P.3d 1140, 1142 (Colo. App. 2004), and to give effect to that intent, courts look to the words used, reading them in context and according them their plain and ordinary meaning.  *Id*.  Moreover, a court need not resort to extrinsic modes of statutory construction unless the statutory language is ambiguous.  *Dep't of Revenue v. Woodmen of the World*, 919 P.2d 806, 809 (Colo. 1996).

As a general matter, courts must give deference to the reasonable interpretations of administrative agencies that are authorized to administer and enforce

the law. *Coffman v. Colo. Common Cause*, 102 P.3d 999, 1005 (Colo. 2004). And, in the case of federal courts reviewing state administrative rules, a federal court should give "deference to a state administrative agency's interpretation and application of a state statute which it is charged with administering." *Macias v. N.M. Dep't of Labor*, 21 F.3d 366, 369 (10th Cir. 1994). Even though an agency's interpretation should be given appropriate deference, its interpretation is not binding on the court. *Coffman*, 102 P.3d at 1005; *see also U.S. W. Commc'ns, Inc. v. Hix*, 986 F. Supp. 13, 16 (D. Colo. 1997) ("federal courts do not defer to state agencies on questions of federal law"). Moreover, deference is not appropriate if the agency's "statutory interpretation would defeat the General Assembly's intent in enacting the statute or is contrary to the plain meaning of the statute." *Bd. of Cnty. Comm'rs v. Colo. Public Utilities Comm'n*, 157 P.3d 1083, 1089 (Colo. 2007); *Colo. Ethics Watch v. Clear the Bench Colo.*, --- P.3d ----, 2012 WL 866861, at *7 (Colo. App. March 15, 2012).

Section 1-40-112(1) states that "[n]o person shall circulate" petitions within the State of Colorado "unless the person is a resident of the state." Colo. Rev. Stat. § 1-40-112(1). The Secretary argues that Rule 15.3.2 is not inconsistent with § 1-40-112(1) because the provision does not expressly define the term "resident" and therefore temporary residents fall within the definition of resident. Docket No. 233 at 9. The Court finds this argument unconvincing.

The General Assembly has stated that, for purposes of determining the "residence" of a person intending to register to vote or to vote in Colorado, the "residence of a person is the principal or primary home" of a person and is that home to

which a person "has the present intention of returning after a departure."  Colo. Rev.

Stat. § 1-2-102.  The term "resident" is also used consistently in other Colorado statutes

regulating the voting process.  *See* Colo. Rev. Stat. § 1-2-102(1)(d) (to register as a

voter a "person shall not be considered to have gained a residence in this state, or in

any county or municipality in this state, while retaining a home or domicile elsewhere");

*see also* Colo. Rev. Stat. § 31-10-201(3)(a) ("The residence of a person is the principal

or primary home or place of abode of a person.").  Colorado courts generally presume

that the legislature has knowledge of the legal import imparted by chosen words and

phrases.  *See People v. Rockwell*, 125 P.3d 410, 417 (Colo. 2005).

Furthermore, Colo. Rev. Stat. § 1-40-111(2)(a), another section of H.B. 1326,

requires that a circulator both provide the address where he or she resides and avow

that he or she is a resident of Colorado.  If the General Assembly intended for the term

"resident" to include temporary residents, it would have been sufficient for a circulator to

list his or her address in Colorado in order to satisfy the "resident" requirement in

§ 1-40-111(2)(a).  However, because § 1-40-111(2)(a) requires a circulator both to

provide an address and to affirm his residency, a circulator needs more than just a

temporary address in Colorado.  If the Court were to accept the Secretary's proposed

construction, one of the requirements of § 1-40-111(2)(a) would be superfluous.

However, a statute must be read in order to give effect to all of its clauses.  *Thermo*

*Dev., Inc. v. Central Masonry Corp.*, 195 P.3d 1166, 1168 (Colo. App. 2008).

Given that the General Assembly has used the term "resident" consistently in

other statutes related to the voting process to exclude temporary residents, the Court

construes § 1-40-112(1) to forbid non-residents from circulating petitions within

14

Colorado.  *See People v. Bowers*, 801 P.2d 511, 524 (Colo. 1990) (cardinal rule of statutory construction that a term which has acquired "a technical or particular meaning, whether by legislative definition or otherwise, should be construed according to its acquired meaning."); *see also Nat'l Farmers Union Property & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 533 (Colo. App. 2000) (when a "statute defines a term, that term must ordinarily be given its statutory meaning.").  Although a federal court must uphold a statute if it is readily "susceptible to a narrowing construction that would make it constitutional," courts should not "rewrite a state law to conform it to constitutional requirements."  *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1194 (10th Cir. 2000) (citation omitted).  Here, the language of the statute is clear in forbidding non-residents from circulating petitions, and the statute is not susceptible to any other reasonable interpretation.  *See Colo. Dep't of Revenue v. Woodmen of the World*, 919 P.2d 806, 809 (Colo. 1996) (when a statute is unambiguous, courts need not resort to extrinsic modes of statutory construction).

Because the Secretary's Rule allows temporary non-residents to circulate petitions within Colorado, it is contrary to the plain language of § 1-40-112(1).  *See Golden Aluminum Co. v. Weld Cnty. Bd. Of Cnty. Comm'rs*, 867 P.2d 190, 192 (Colo. App. 1993) (rejecting an agency interpretation that was contrary to the plain meaning of the statute).  To the extent that the Secretary argues that he has the authority to promulgate rules and regulations that have the force and effect of law, *Cornerstone Partners v. Industrial Claim Appeals Office*, 830 P.2d 1148 (Colo. App. 1992), it is axiomatic that an administrative rule is not the equivalent of a statute.  *Id*.  at 1149.

Thus, because the Secretary's rule is contrary to law, it is not entitled to deference.

*See Colo. Consumer Health Initiative v. Colo. Bd. of Health*, 240 P.3d 525, 528 (Colo.

App. 2010) ("[an agency] rule may not modify or contravene an existing statute, and any

rule that is inconsistent with or contrary to a statute is void."); *Suetrack USA v. Indus.*

*Claim Appeals Office*, 902 P.2d 854 (Colo. App. 1995) (any regulation that is contrary to

or inconsistent with the regulatory authorizing statute is void).   The Court finds that the

Secretary is not entitled to summary judgment on this claim.

### D.   Second Claim for Relief

Plaintiffs' second claim for relief challenges the legality of § 1-40-111(2)(b)(I)(C).

Docket No. 164 at 19-20.   Section 1-40-111(2)(b) states:

> (I) A notary public shall not notarize an affidavit required pursuant to
> [§ 1-40-111(2)(a)] unless:
> . . .
>
> (C) The circulator presents a form of identification, as such term is defined
> in section 1-1-104(19.5).   A notary public shall specify the form of
> identification presented to him or her on a blank line, which shall be part
> of the affidavit form.

Colo. Rev. Stat. § 1-40-111(2)(b)(I)(C).   Plaintiffs claim that this section of the statute is

unconstitutional because it excludes non-resident circulators.   Plaintiffs argue that,

because § 1-40-111(2)(a) expressly requires circulators to show proof of residency in

Colorado, § 1-40-111(2)(b)(I)(C) incorporates the residency requirement by

cross-referencing § 1-40-111(2)(a).   Docket No. 164 at 20.   In other words, plaintiffs

argue that, in addition to requiring identification, § 1-40-111(2)(b)(I)(C) also requires that

circulators show proof of Colorado residency.

Under § 1-40-111(2)(b)(I)(C), a circulator must provide a form of identification as defined in § 1-1-104(19.5).  Paragraph (b) of subsection 19.5 states "[a]ny form of identification indicated in paragraph (a) of this subsection (19.5) that shows the address of the eligible elector shall be considered identification only if the address is in the state of Colorado."  Colo. Rev. Stat. § 1-1-104(19.5)(b).  Despite this fact, § 1-1-104(19.5) lists several permissible forms of identification for which Colorado residency is not a prerequisite.  See id. (permissible identification includes birth certificate, medicare or medicaid card, United States passport, etc.).  Additionally, an individual need not reside in Colorado in order to obtain state-issued identification.  See Colo. Rev. Stat. § 42-1-102(81) (a person who has obtained gainful employment in the state may obtain Colorado identification).  Thus, although § 1-1-104(19.5)(b) requires that, if any form of identification shows an address, it show an address located in Colorado, this does not convert § 1-40-111(2)(b)(I)(C) into a residency requirement.

The Court finds plaintiffs' interpretation of § 1-40-111(2)(c) unpersuasive.  First, the provisions of § 1-40-111(2)(c) are directed at the Secretary of State, while those of § 1-40-111(2)(b)(I)(C) are directed at notaries public.  Although both sections reference each other, plaintiffs fail to explain how these two provisions expressly incorporate each other's terms.  The natural interpretation of the statute is to read § 1-40-111(2)(b)(I)(C) as directing the notary public to verify a circulator's identification to ensure that the circulator is the person named in the affidavit.  On the other hand, § 1-40-111(2)(c) requires the Secretary to reject petitions that lack a "valid notarized affidavit" that complies with §§ 1-40-111(2)(a) and (b).  Similarly, § 1-40-111(2)(b)(I)(C) does not require that a notary public ensure that the contents of the affidavit in § 1-40-111(2)(a)

17

are accurate.  Accordingly, because § 1-40-111(2)(b)(I)(C) does not contain a residency requirement, it does not restrict the ability of non-resident circulators to gather signatures in Colorado.

Given that § 1-40-111(2)(b)(I)(C) does not restrict non-resident circulators from signature-gathering activities, this section does not severely burden plaintiffs' First Amendment rights.  Plaintiffs do not otherwise argue that § 1-40-111(2)(b)(I)(C) is unconstitutional if it does not include a residency requirement.  Therefore, the Court finds that there are no genuine disputes of material fact as to the constitutionality of § 1-40-111(2)(b)(I)(C), and the Secretary is entitled to summary judgment on plaintiffs' second claim for relief.

### E.  Third Claim for Relief

Plaintiffs' third claim for relief challenges the legality of the "call-back" provision in Colo. Rev. Stat. §§ 1-40-111(2)(a) and 1-40-111(3)(a).  Section 1-40-111(2)(a) states:

> [t]o each petition section shall be attached a signed, notarized, and dated affidavit executed by the person who circulated the petition section, which shall include . . . that he or she understands that failing to make himself or herself available to be deposed and to provide testimony in the event of a protest shall invalidate the petition section if it is challenged on the grounds of circulator fraud.

Section 1-40-111(3)(a) states:

> As part of any court proceeding or hearing conducted by the secretary of state related to a protest of all or part of a petition section, the circulator of such petition section shall be required to make himself or herself available to be deposed and to testify in person, by telephone, or by any other means permitted under the Colorado rules of civil procedure.  Except as set forth in paragraph (b) of this subsection (3), the petition section that is the subject of the protest shall be invalid if a circulator fails to comply with the requirement set forth in this paragraph (a) for any protest that includes an allegation of circulator fraud that is pled with particularity regarding:

18

(I)     Forgery of a registered elector's signature;

(II)    Circulation of a petition section, in whole or part, by anyone other than the person who signs the affidavit attached to the petition section;

(III)   Use of a false circulator name or address in the affidavit; or

(IV)    Payment of money or other things of value to any person for the purpose of inducing the person to sign the petition.

Colo. Rev. Stat. § 1-40-111(3)(a).

In their second amended complaint, plaintiffs asserted that the call-back provision severely burdened their rights to free speech because it coerced circulators to "bind themselves for an indefinite period to the State of Colorado thereby" decreasing the pool of available circulators. Docket No. 47 at 15. However, in response to the summary judgment motion, plaintiffs now allege that the State has failed to identify a legitimate interest to burden their First Amendment rights through the call-back provision. Docket No. 164 at 21. Plaintiffs argue that the call-back provision only furthers the interest of opponents of proposed petitions and the state has no colorable interest in favoring either the proponent or the opponent to a petition. *Id*. at 22.

The legislative findings of H.B. 1326 concluded that, in order for the initiative process to operate honestly, it was essential for circulators to verify all elements of their affidavits and make themselves available to the Secretary for a determination of the petition's sufficiency. Colo. Rev. Stat. § 1-40-101(2)(c). In *Yes on Term Limits*, the Tenth Circuit acknowledged that the State of Oklahoma had a legitimate interest in protecting the integrity of the petition process by requiring circulators to return to the state for petition challenges. 550 F.3d at 1029. The Tenth Circuit concluded, however,

19

that Oklahoma's proposed scheme was not narrowly tailored to further that interest.

Similarly, in *Chandler v. City of Arvada, Colo.,* 292 F.3d 1236 (10th Cir. 2002), the

Tenth Circuit found that the City of Arvada had a compelling interest in its call-back

provision (Arvada could require that a "circulator agree to submit to the jurisdiction of

the Arvada Municipal Court"), but that the provision was not narrowly tailored to meet its

interest.  292 F.3d at 1244.  Given that numerous courts have found that states have an

interest in ensuring the reliability and honesty of the ballot and initiative process, the

Secretary has identified a legitimate state interest in the call-back provision.  *See*

*Buckley*, 525 U.S. at 187 (there must be substantial regulation of elections if they are to

be fair and honest and if some sort of order, rather than chaos, is to accompany the

democratic process); *Am. Constitutional Found.*, 120 F.3d at 1098 (the state has

interest in both candidate elections and ballot issues); *Campbell*, 203 F.3d at 741 (the

Colorado General Assembly has authority to adopt legislation designed to prevent fraud

or mistake or other abuses in petition process).

The Secretary has presented evidence showing that the call-back provision will

have no measurable impact on the pool of available circulators.  *See, e.g.,* Docket No.

146-1 at 7 (Lamm Consulting Dep. 155:1-2) (the need to make circulators available for

depositions by telephone did not pose a problem for the majority of the petition

circulators).  One of plaintiffs' experts, Edward Agazarm, agrees that the circulator

availability agreement is unlikely to deter circulators who wish to work in Colorado.  *See*

Docket No. 144-9 at 1 (Agazarm Dep. 275:21-23).  Based on the undisputed record, the

Court is satisfied that the call-back provision would not discourage participation by professional circulators or others in the petition gathering process.

As stated earlier, although not identified in their second amended complaint, plaintiffs argue in response to the Secretary's motion that the call-back provision burdens their First Amendment rights.  Plaintiffs present an affidavit from Jennifer Gratz, an employee of the Civil Rights Institute and American Civil Rights Coalition.  Docket No. 164-10.  Ms. Gratz states that the "availability" requirement could significantly increase legal costs by encouraging and permitting political opponents to depose multiple petition circulators.  Docket No. 164-10 at 3, ¶ 10.  However, Ms. Gratz does not explain how the call-back provision increases the costs of legal challenges to initiative proponents compared to the previous system of petition challenges.  Given that the statute expressly allows for depositions by telephone, challenges to circulators' signatures are no more costly for in-state circulators than they would be for those located outside of Colorado.  Moreover, to the extent Ms. Gratz anticipates frivolous challenges, Colo. Rev. Stat. § 1-40-118(2.5)(b) allows for the recovery of attorney's fees if the challenge is found to lack "substantial justification."  The Court finds that Ms. Gratz's affidavit is not persuasive because it does not adequately explain why signature gathering costs would increase because of the call-back provision.

Plaintiffs also present an affidavit from plaintiff Jon Caldara, a proponent of initiatives, to show that the call-back provision chilled his participation in the initiative process.  Docket No. 166-7.  The Court finds that Mr. Caldara's affidavit also fails to raise any genuine dispute of fact regarding burdens on plaintiffs' First Amendment Rights.  Mr. Caldara's affidavit does not explain how the call-back provision has chilled

21

his rights, *id*. at 4, ¶¶ 13-14, and like Ms. Gratz's affidavit, fails to explain how it would increase the costs of legal challenges to proponents compared to the previous system. Accordingly, plaintiffs' evidence fails to show the severity of the burden the call-back provision imposes on their First Amendment rights.  Because the evidence presented by the Secretary shows that the call-back provision imposes no more than a slight burden on petition entities, the Court applies a balancing test.

As noted above, the state has an important interest in protecting the legitimacy of the petition process.  The circulator availability requirement is legitimately related to that interest.  Although the opponent of a petition may gain some advantage from challenging petition signatures, the incremental burden from this provision is small and there is a benefit to the integrity of the initiative process in an impartial determination of the validity of signatures.  Because the state has a strong interest in maintaining the integrity of the petition process and the statute imposes little or no burden on plaintiffs' rights, the Court finds that the state's interest outweighs the minimal burden imposed on plaintiffs.  Accordingly, the Secretary is entitled to summary judgment on plaintiffs' third claim for relief.

### F.   Fourth Claim for Relief

Plaintiffs' fourth claim for relief alleges that Colorado Revised Statutes § 1-40-112(3) violates the free speech protections of the First Amendment.  This provision states:

> The secretary of state shall develop circulator training programs for paid and volunteer circulators.  Such programs shall be conducted in the broadest, most cost-effective manner available to the secretary of state, including but not limited to training sessions for persons associated with the proponents or a petition entity, as defined in section 1-40-135(1), and

by electronic and remote access.  The proponents of an initiative petition or the representatives of a petition entity shall inform paid and volunteer circulators of the availability of these training programs as one manner of complying with the requirement set forth in the circulator's affidavit that a circulator read and understand the laws pertaining to petition circulation.

Colo. Rev. Stat. § 1-40-112(3).  According to § 1-40-135(2)(a):

It is unlawful for any petition entity to provide compensation to a circulator to circulate a petition without first obtaining a license therefor from the secretary of state.  The secretary of state may deny a license if he or she finds that the petition entity or any of its principals have been found, in a judicial or administrative proceeding, to have violated the petition laws of Colorado or any other state and such violation involves authorizing or knowingly permitting any of the acts set forth in paragraph (c) of this subsection (2), excluding subparagraph (V) of said paragraph (c). The secretary of state shall deny a license:

(I)     Unless the petition entity agrees that it shall not pay a circulator more than twenty percent of his or her compensation on a per signature or per petition basis; or

(II)    If no current representative of the petition entity has completed the training related to potential fraudulent activities in petition circulation, as established by the secretary of state, pursuant to section 1-40-112(3).

Colo. Rev. Stat. § 1-40-135(2)(a).

Plaintiffs argue that the petition entity training provision is unconstitutional because it grants the Secretary unfettered discretion to expand the requirements of state mandated training.  Docket No. 164 at 24.  Plaintiffs state that the enforcement provisions of H.B. 1326 require that a petition entity complete state-mandated training before meeting the eligibility requirements to obtain a license.  Docket No. 164 at 23. Plaintiffs argue that, because the statute provides the Secretary with unlimited discretion in devising the training program, the Secretary can devise costly and burdensome multi-day training as a condition to obtain a license.  *Id*. at 24.  Plaintiffs

claim that state-mandated training is a form of prior restraint as costly training could delay petition entities' ability to obtain a license indefinitely, thereby chilling their speech. *Id*. Plaintiffs also contend that state-mandated training would reduce the number of persons lawfully able to circulate petitions. *Id*.

As a threshold matter, the Court notes that nothing in the record supports plaintiffs' argument that the state-mandated training would reduce the pool of circulators. First, the training requirement is directed at petition entities, not circulators, and therefore does not directly impact the pool of circulators. Additionally, Rule 30(b)(6) deposition testimony from Lamm Consulting, one of plaintiffs' witnesses, shows that the Secretary's current training requirement has had no measurable impact on circulators' willingness to work in Colorado. *See* Docket No. 146-1 at 5 (Lamm Consulting Dep. 152:4-7) (none of the circulators refused to work on the petition drive because of the petition training).

Unlike adverse action taken in response to actual speech, a prior restraint chills potential speech before it happens. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007). In the case of licenses, the concern is that a party will have to refrain from speaking while it awaits a decision from the licensing authority. *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1163 (10th Cir. 2006). A scheme of prior restraint could also give public officials the power to deny the use of a forum in advance of actual expression. *See, e.g., Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (a law banning solicitation activity before complying with registration requirements). Nevertheless, assuming the state's petition entity

24

training requirement here qualifies as a form of prior restraint, the training requirement is not per se unconstitutional.  *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (noting that prior restraints are not unconstitutional per se).  Generally, a system of prior restraint is unconstitutional if it contains two features: first, it places "'unbridled discretion in the hands of a government official or agency'"; and second, it fails to place limits on the time within which the decisionmaker must act.[1]  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-26 (1990).

As to the issue of discretion, a law subjecting the exercise of First Amendment freedoms to instances of prior restraint must contain narrow, objective, and definite standards to guide the decisionmaker.  *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992).  Such standards provide guideposts that check the decisionmaker and allow courts to quickly and easily determine whether the decisionmaker is discriminating against disfavored speech.  *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988).  However, laws that are content neutral are not subject to the strictest of procedural safeguards.  *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002).

Here, the Court finds that § 1-40-112(3) does not give the Secretary unbridled discretion in the development of the training program.  Section 1-40-112(3) requires that the Secretary use the "most cost-effective" measures to develop training programs including "electronic and remote access" training sessions.  Colo. Rev. Stat. § 1-40-112(3).  This language evinces a legislative intent that the Secretary adopt a training program that is convenient and accessible to petition entities.  The Secretary

---

[1]Neither side argues that the time limit feature is implicated by the state-mandated training requirement.

has provided evidence showing that the current petition training course is not unduly burdensome for petition entities.[2]  Plaintiffs' Rule 30(b)(6) witness from Lamm Consulting stated in his deposition that it was not burdensome to complete the Secretary's training program.  *See* Docket No. 146-1 at 12 (Lamm Consulting Dep. 298:12-18).  Mr. Kennedy, of Kennedy Enterprises, another of plaintiffs' witnesses, also believed that the Secretary's current training program was not demanding since it only required reading a 43-page booklet.  *See* Docket No. 146-2 at 1 (Kennedy Dep. 32:12-24).  Moreover, plaintiffs have failed to provide evidence showing that the Secretary's current training program is burdensome, that the current training unduly restricts their ability to run petition campaigns, or that there is any likelihood that the Secretary will impose more burdensome training requirements in the future.[3] Accordingly, the Court finds that the statute's training requirement is not a severe burden on plaintiffs' First Amendment rights and therefore applies a balancing test.

Professional circulators usually work in various states and therefore are subject to a variety of state laws.  In the legislative findings, the General Assembly determined that certain circulators were circulating petition sections "without even a rudimentary understanding of the [state's] legal requirements."  Colo. Rev. Stat. § 1-40-101(2)(a)(I). In instituting the training program, the Secretary claims that Colorado has a significant

---

[2]The Secretary's current training program consists of reading a 43-page booklet and signing an affirmation of having done so.  Docket No. 144-5.

[3]Plaintiffs' argument that $100 could be burdensome for some petition entities is unconvincing.  Docket No. 164 at 3, ¶ 12.  Given that petition campaigns generally cost over $100,000, *see* Docket No. 164-5 (gathering 130,000 signatures at $2.20 per signature), a requirement that an entity pay $100 to inform itself of Colorado law is a minimal burden.

interest in ensuring that petition entities are knowledgeable about Colorado law in order to inform paid or unpaid circulators about the state's statutory requirements.  The Court agrees.  Because plaintiffs have failed to provide evidence showing the severity of the burden imposed on their petition activity, the balancing of the interests weighs in the favor of the state.  Accordingly, the Court finds that there are no genuine questions of material fact with regard to this claim and the Secretary is entitled to summary judgment on plaintiffs' fourth claim for relief.

### G.   Fifth Claim for Relief

Plaintiffs' fifth claim for relief challenges the constitutionality of § 1-40-112(4) also known as the "partial pay ban" provision.  Section 1-40-112(4) states that "[i]t shall be unlawful for any person to pay a circulator more than twenty percent of his or her compensation for circulating petitions on a per signature or petition section basis." Colo. Rev. Stat. § 1-40-112(4).  Section 1-40-112(4) does not strictly prohibit paying petition circulators by the number of signatures that they gather, but does limit per-signature compensation to 20% of a circulator's overall compensation.  Plaintiffs argue that restricting pay-per-signature compensation to only twenty percent of circulators' overall earnings severely burdens their First Amendment rights.  Docket No. 164 at 26.

The Secretary concedes that "balancing the burden of a law with the state's justifications for it is a fact-intensive inquiry" and that "[s]ome genuine factual disputes may exist."  Docket No. 233 at 17-18.  However, the Secretary believes that plaintiffs have failed to raise genuine issues of material fact as to whether the hybrid payment law will shrink the pool of circulators or convert signature gatherers from independent

contractors to employees.  Thus, the Secretary requests entry of partial summary judgment as to those subsidiary issues in plaintiffs' fifth claim for relief.

The parties have submitted sharply contrasting evidence on the issue of whether § 1-40-112(4) will shrink the pool of circulators.  The Court finds that there exist genuine issues of material fact which preclude summary judgment on this issue.  The resolution of that issue must await trial.  Similarly, the Court finds that factual disputes preclude summary judgment on the "independent contractor" versus "employee" issue.  The determination of this issue by state taxing entities is a fact-intensive inquiry.  It is no less so when done as to prove or disprove a collateral consequence, as in this case.  The resolution of the factual disputes at trial will allow the Court to apply Colorado law to determine what impact, if any, the circulators' employment status under the Colorado Employment Security Act will have on the overall costs of securing a petition on a statewide ballot.

The Court will deny defendant's motion for summary judgment as to the plaintiffs' fifth claim for relief.

## H.   Sixth Claim for Relief

The Secretary states that the ruling in *Hayes v. Buescher*, Case No. 2010-cv-6078, from the Denver District Court has mooted this issue.  Docket No. 144-7.  Plaintiffs do not disagree.  Accordingly, the Court dismisses this claim as moot.

### I.   Seventh Claim for Relief

Plaintiffs state that Rule 15.2.2 as promulgated by the Secretary cures their

unconstitutional vagueness claim.  Docket No. 164 at 38.  Accordingly, the Court

dismisses this claim as moot.

### J.   Eighth Claim for Relief

Plaintiffs' eighth claim for relief alleges that Colorado Revised Statutes

§ 1-40-135(2)(a) and § 1-40-135(2)(c) violate the free speech protections of the First

Amendment.  According to § 1-40-135(2)(a):

> It is unlawful for any petition entity to provide compensation to a circulator
> to circulate a petition without first obtaining a license therefor from the
> secretary of state.  The secretary of state may deny a license if he or she
> finds that the petition entity or any of its principals have been found, in a
> judicial or administrative proceeding, to have violated the petition laws of
> Colorado or any other state and such violation involves authorizing or
> knowingly permitting any of the acts set forth in paragraph (c) of this
> subsection (2), excluding subparagraph (V) of said paragraph (c). The
> secretary of state shall deny a license:
>
> > (I)     Unless the petition entity agrees that it shall not pay a
> > circulator more than twenty percent of his or her
> > compensation on a per signature or per petition basis; or
>
> > (II)    If no current representative of the petition entity has
> > completed the training related to potential fraudulent activities
> > in petition circulation, as established by the secretary of state,
> > pursuant to section 1-40-112(3).

Section 1-40-135(2)(c) states:

> The secretary of state shall revoke the petition entity license if, at any time
> after receiving a license, a petition entity is determined to no longer be in
> compliance with the requirements set forth in paragraph (a) of this
> subsection (2) or if the petition entity authorized or knowingly permitted:
>
> > (I)     Forgery of a registered elector's signature;

(II)    Circulation of a petition section, in whole or part, by anyone other than the circulator who signs the affidavit attached to the petition section;

(III)    Use of a false circulator name or address in the affidavit;

(IV)    Payment of money or other things of value to any person for the purpose of inducing the person to sign or withdraw his or her name from the petition;

(V)    Payment to a circulator of more than twenty percent of his or her compensation on a per signature or per petition section basis; or

(VI)    A notary public's notarization of a petition section outside of the presence of the circulator or without the production of the required identification for notarization of a petition section.

Colo. Rev. Stat. § 1-40-135(2)(c).

Section 1-40-135(2)(a) is an example of a prior restraint on speech as it requires that a petition entity obtain a license before commencing solicitation activity.  However, as noted above, although the licensing requirement may constitute a prior restraint on speech, *see Am. Target Adver.,* 199 F.3d at 1250, such licensing requirements may survive a constitutional challenge if they contain narrow, objective, and definite standards to guide the licensing authority.  *Forsyth Cnty.,* 505 U.S. at 131.  Additionally, as long as the statute's licensing requirement is content neutral, it is not subject to strict procedural safeguards.  *Thomas,* 534 U.S. at 322.

In this instance, H.B. 1326 is a content neutral statute, as it does not authorize the Secretary to pass judgment on the content of the speech.  *Thomas*, 534 U.S. at 322.  Additionally, despite plaintiffs' argument to the contrary, the provision contains sufficiently precise, clear, and neutral standards that govern when the Secretary can

deny, suspend, or revoke a permit.  First, the Secretary can only deny a petition if (1)

the petition entity has not completed petition entity training, (2) the petition entity

violated § 1-40-112(4), or (3) the petition entity violated petition election law.  Colo. Rev.

Stat. § 1-40-135(2)(a).  Second, the Secretary may only revoke a petition entity's

license if the entity knew or authorized (1) forgery of an elector's signature, (2) a petition

not circulated by the circulator who signed the affidavit, (3) use of a false circulator's

name or address, (4) paying an elector to sign a petition, (5) violations of § 1-40-112(4),

or (6) signing a circulator's affidavit outside the presence of a notary.  Colo. Rev. Stat.

§ 1-40-135(2)(c).  These standards curtail the Secretary's discretion when granting a

license.

Additionally, pursuant to Colo. Rev. Stat. § 1-40-135(4), the Secretary is required

to "issue a decision on any application for a new or reinstated license within ten

business days after a petition entity files an application."  The Secretary provides

evidence showing that petition entity licenses are usually granted within one business

day.  Docket No. 233-8 at 1, ¶ 8 ("Of the 10 complete applications, three were certified

as licensed petition entities within the same business day, six were certified within one

business day, and one was certified within two business days"); *see also* Docket No.

233-1 at 2 (Kennedy Dep. 32:7-10) (explaining that his entity obtained a license within

one business day from the Secretary of State); *Walker v. Oregon*, 2010 WL 1224235,

at *9 (D. Or. March 23, 2010) (finding no unconstitutional restraint when the statute

ordered the Secretary of State to grant licenses within two days of the application).

Because the licensing requirement does not give the Secretary unbridled

discretion, the statute is content neutral, and the statute places limits on the time within

which the Secretary must act, the licensing requirement is not an unconstitutional prior

restraint.  Moreover, because plaintiffs have failed to present evidence showing the

severity of the burden imposed on their First Amendment rights, the Court applies a

balancing test.  The state has an interest in the regulation of the initiative process to

ensure it is fair and honest, which this provision promotes, and plaintiffs have neither

shown a severe burden on their First Amendment rights nor raised a genuine issue of

material fact as to the constitutionality of the licensing provision.  Accordingly, the

Secretary is entitled to summary judgment on plaintiffs' eighth claim for relief.

### K.   Ninth Claim for Relief

Plaintiffs' ninth claim for relief alleges that the disclosure provision of

§ 1-40-121(1) violates the free speech protections of the First Amendment.  The

parties, however, rely on a prior version of § 1-40-121(1).  House Bill 11-1072 amended

the law on June 2, 2011.  *See* 2011 Colo. Sess. Laws 255 (West 2011).  The previous

version of § 1-40-121(1) stated:

> The proponents of the petition or an issue committee acting on behalf of
> the proponents shall file with the official who receives filings under the
> "Fair Campaign Practices Act", article 45 of this title, for the election a
> report stating the dates of circulation by all circulators who were paid to
> circulate a section of the petition, the total hours for which each circulator
> was paid to circulate a section of the petition, and the gross amount of
> wages paid for such hours.  The filing shall be made at the same time the
> petition is filed with the secretary of state.  A payment made to a circulator
> is an expenditure under article 45 of this title.

Colo. Rev. Stat. § 1-40-121(1) (2010).  The new version of Colo. Rev. Stat. § 1-40-121

had an effective date of August 10, 2011.  Section 1-40-121 now states:

> (2) No later than ten days after the date that the petition is filed with the
> secretary of state, the designated representatives of the proponents must
> submit to the secretary of state a report that:

32

(a) States the dates of circulation by all circulators who were paid to circulate a section of the petition, the total hours of which each circulator was paid to circulate a section of the petition, the gross amount of wages paid for such hours, and any addresses used by circulators on their affidavits that the designated representatives or their agents have determined, prior to petition filing, to be false addresses;

(b) Includes any other expenditures made by any person or issue committee related to the circulation of petitions for signatures. Such information shall include the name of the person or issue committee and the amount of the expenditure.

Colo. Rev. Stat. § 1-40-121(2) (2012).  Since the challenged portions of § 1-40-121 remain virtually unchanged, the record is sufficient for the Court to consider the issue on summary judgment.

In the Court's previous Order, the Court enjoined enforcement of § 1-40-121(1) insofar as it applied to the restriction on pay-per-signature compensation.  Docket No. 60 at 37.  The Secretary does not dispute that, if the Court invalidates the partial ban on the pay-per-signature provision in § 1-40-112(4), the portion of the challenged statute that requires petition entities to report the total number of hours paid should also be invalidated.  Docket No. 144 at 29.  However, the Secretary argues that the remainder of the statute should stand based on the Supreme Court's ruling in *Buckley*.  *Id*.

Plaintiffs claim that the disclosure of proponents' names and total amount spent to collect signatures is fully vindicated by other Colorado statutes.  *Id*.  In particular, plaintiffs argue § 1-40-121 is unnecessary because § 1-45-108 also requires campaign disclosures.  The Court rejects plaintiffs' argument that the disclosure requirements of § 1-40-121 add "nothing to achieving the state's asserted interest in identifying the *source* and amount of money spent."  Docket No. 164 at 39 (emphasis in original).  The general disclosure requirements of Colo. Rev. Stat. § 1-45-108 are not tailored to the

33

state's interest in regulating initiative and petition drives.  Section 1-45-108 requires disclosures of contributions to candidates, political committees, and issue committees, among other things, and is not focused on signature gathering activities.  Colo. Rev. Stat. § 1-45-108(1).  Thus, although some provisions of § 1-45-108 may also contain disclosure requirements, § 1-45-108 does not allow voters to know specifically "who has proposed [a measure]," and "who has provided funds for its circulation."  *Buckley*, 525 U.S. at 203.

Plaintiffs also argue that requiring petition entities to report the total hours for which each circulator was paid, or the gross amount of wages paid for such hours, is not a compelling state interest because it serves no purpose in identifying the source of the money spent.  Docket No. 164 at 39.  As stated in the preliminary injunction order [Docket No. 72], the Supreme Court's ruling in *Buckley v. Am. Constitutional Law Foundation, Inc.* "was less sympathetic to the loss of anonymity that is felt by those who fund petition campaigns."  Docket No. 72 at 22.  In *Buckley*, the Supreme Court noted that "[d]isclosure of the names of initiative sponsors, and of the amounts they have spent gathering support for their initiatives," acts as a control or check on the domination of the initiative process by affluent special interest groups.  *Buckley*, 525 U.S. at 202-03.  Such provisions allow voters to remain informed of the source and amount of money spent by proponents to get a measure on the ballot.  *Id*.  Because § 1-40-121 does not require that petition entities release the names or addresses of

circulators,[4] the Court finds that plaintiffs have failed to provide evidence of the severity of the burden imposed on their First Amendment rights by this provision.

Since its decision in *Buckley*, the Supreme Court has clarified that a campaign finance disclosure requirement is constitutional only if it survives exacting scrutiny, meaning that it is substantially related to a sufficiently important governmental interest. *See Doe v. Reed*, --- U.S. ----, 130 S.Ct. 2811 (2010). In *Reed*, the Supreme Court examined a statute authorizing disclosure of the signatories to a ballot initiative. *Id*. at 2818. In explaining why disclosure requirements were not subject to a strict scrutiny analysis, the *Reed* Court emphasized that the statute at issue was "not a prohibition on speech, but instead a *disclosure* requirement." *Id*. "[D]isclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities' and do not 'prevent anyone from speaking.'" *Citizens United v. Fed. Election Comm'n*, --- U.S. ----, 130 S.Ct. 876, 914 (2010) (internal citations omitted).

Plaintiffs fail to identify a severe burden on their rights, which might trigger strict scrutiny, and, as a result, the Court applies exacting scrutiny. To survive exacting scrutiny, the disclosure provision must bear a substantial relationship to the state's informational interest. *See Reed*, 130 S.Ct. at 2818. Here, the state has a sufficiently important interest in the disclosure law because, by revealing information about the

---

[4]Newly amended § 1-40-121(2)(a) requires that petition entities report any "false addresses" to the Secretary. False addresses are places identified in a circulator's affidavit that do not represent the circulator's correct permanent domicile at the time he or she circulated petitions. Given that the statute only requires the disclosure of invalid addresses, this provision does not implicate *Buckley's* concern that circulators would "surrender the anonymity" enjoyed by their volunteer circulator counterparts and is therefore not constitutionally problematic. 525 U.S. at 204.

contributors to ballot initiatives, disclosure laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention. *Cf. Human Life Of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1008 (9th Cir. 2010) ("Campaign finance disclosure requirements thus advance [an] important and well-recognized governmental interest"). Additionally, § 1-40-121 is substantially related to the state's interest as it limits disclosure requirements to the proponents' designated representative[5] and only requires the disclosure of payments to circulators made in furtherance of the petition. *See* Colo. Rev. Stat. § 1-40-121(2). Therefore, § 1-40-121 is substantially related to the state's sufficiently important informational interest.

Plaintiffs, on the other hand, present scant evidence about the burdens imposed on their First Amendment rights by the disclosure provision. They do not assert that the disclosure requirements have burdened their ability to raise money or place an undue financial burden on petition entities. Thus, the state's interest in informing the public about the sources of funding for ballot measures outweighs the slight burden imposed on plaintiffs by the reporting requirement. Accordingly, the Court finds that the Secretary is entitled to summary judgment on this claim to the extent it does not implicate the injunction on pay-per-signature compensation.

---

[5]A designated representative means a person that represents the proponents in all matters affecting the petition. Colo. Rev. Stat. § 1-40-102(3.7). Pursuant to § 1-40-104, when proponents file a proposed text of the initiative for consideration on the statewide ballot, they must designated the names and mailing addresses of two persons to represent proponents in all matters affecting the petition. Colo. Rev. Stat. § 1-40-104.

**L.   Tenth Claim for Relief**

Plaintiffs' tenth claim for relief alleges that § 1-40-135(3)(a) violates the free speech rights guaranteed by the First Amendment.  Section 1-40-135(3)(a) states:

> Any procedures by which alleged violations involving petition entities are heard and adjudicated shall be governed by the "State Administrative Procedure Act," article 4 of title 24, C.R.S.  If a complaint is filed with the secretary of state pursuant to section 1-40-132(1) alleging that a petition entity was not licensed when it compensated any circulator, the secretary may use information that the entity is required to produce pursuant to section 1-40-121 and any other information to which the secretary may reasonably gain access, including documentation produced pursuant to paragraph (b) of subsection (2) of this section, at a hearing.  After a hearing is held, if a violation is determined to have occurred, such petition entity shall be fined by the secretary in an amount not to exceed one hundred dollars per circulator for each day that the named individual or individuals circulated petition sections on behalf of the unlicensed petition entity.  If the secretary finds that a petition entity violated a provision of paragraph (c) of subsection (2) of this section, the secretary shall revoke the entity's license for not less than ninety days or more than one hundred eighty days.  Upon finding any subsequent violation of a provision of paragraph (c) of subsection (2) of this section, the secretary shall revoke the petition entity's license for not less than one hundred eighty days or more than one year.  The secretary shall consider all circumstances surrounding the violations in fixing the length of the revocations.

Colo. Rev. Stat. § 1-40-135(3)(a).

Plaintiffs state that, if the Court finds that the licensing provision is unconstitutional, then this provision must also be unconstitutional.  Docket No. 164 at 39.  As previously noted, the licensing and training requirements are permissible instances of prior restraints on speech.  Therefore, given that plaintiffs have no predicate basis for this claim, there are no genuine material issues of fact and the Secretary is entitled to summary judgment on plaintiffs' tenth claim for relief.

### M.   Motion to Strike

The Secretary requests that the Court strike certain portions of plaintiffs'

affidavits pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure.  *See* Fed.

R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated.").

The Court, however, did not rely upon any of the challenged portions of the declarations

in resolving the motion for summary judgment.  *See Rich Floors, LLC v. Jaylon, Inc.,*

No. 08-cv-02291-LTB-BNB, 2010 WL 1332944, at *11 (D. Colo. April 5, 2010) (denying

the motion to strike portions of affidavits because the court did not consider the

complained-of evidence).  Therefore, the pending motion to strike is denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Secretary's Motion for Summary Judgment [Docket No. 143] is

**GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that the Secretary's Motion for Summary Judgment is granted as to

plaintiffs' Second, Third, Fourth, Eighth, Ninth, and Tenth claims for relief.  The Court

denies the Secretary's Motion for Summary Judgment as to plaintiffs' First and Fifth

claims for relief.  It is further

**ORDERED** that plaintiffs' Sixth and Seventh claims for relief are **DISMISSED** as

moot.  It is further

**ORDERED** that the Secretary's Motion to Strike Portions of Affidavits Submitted in Support of Plaintiffs' Response to Motion for Summary Judgment [Docket No. 234] is **DENIED** as moot.

DATED April 26, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge