## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00609-PAB-MEH

THE INDEPENDENCE INSTITUTE, *et al*.,

      Plaintiffs,

v.

SCOTT GESSLER, in his official capacity as Colorado Secretary of State,

      Defendant.

_____

## PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND EXPENSES
_____

Plaintiffs, by and through counsel David A. Lane of KILLMER, LANE & NEWMAN, LLP, hereby move this Court for an ORDER For Attorneys Fees And Expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, FED.R.CIV.P. 54 (d), and other supporting law. As grounds for this Motion, Plaintiffs state as follows:

### INTRODUCTION

For the past three years, Plaintiffs have been challenging restrictions on Colorado citizens' abilities to place propositions on the ballot through the initiative process. At the heart of Plaintiffs' claims were two primary restrictions: the prohibition on paying circulators more than twenty percent of their compensation on a per-signature basis ("the Pay-Per-Signature Ban"), and a requirement that circulators be residents of Colorado ("the Residency Requirement").[1] After obtaining a preliminary injunction preventing Defendant from enforcing

_____

[1] Plaintiffs also challenged ancillary provisions of the law that enforced these provisions.

the Pay-Per-Signature Ban and the Residency Requirement, the parties engaged in substantial

discovery leading up to a bench trial.  On the eve of that trial, Defendant conceded that the

Residency Requirement violated the First Amendment.  Plaintiff had previously informed this

Court that the only issue remaining was the pay per hour/pay per signature issue and counsel was

not pursuing the other claims in the Complaint.  Trial proceeded on Plaintiffs' challenge to the

Pay-Per-Signature Ban, and in a complete victory, Plaintiffs ultimately obtained a permanent

injunction prohibiting Defendant from enforcing the Pay-Per-Signature Ban because it violated

the First Amendment.  Defendant has determined that it will not appeal from this ruling.  Based

upon their overwhelming success, Plaintiffs are entitled to an award of attorney's fees pursuant to

statute.

## STATEMENT OF FACTS

This case began when the Colorado Legislature enacted a law restricting Colorado

citizens' ability to collect signatures for petitions.  It concluded when Plaintiffs obtained a

permanent injunction prohibiting the restrictions from being enforced.

### I.  HB 1326 Was Enacted

Pursuant to the Colorado Constitution and state statutory law, Colorado citizens are

permitted to place propositions on the ballot through the initiative process.  In 2009, the

Colorado Legislature passed HB 1326 ("the Act"), which restricted the ability of citizens to

circulate petitions.[2]  Allegedly concerned about fraud committed by petition circulators, the

Legislature imposed the following restrictions on petition circulation through the Act: the time

for filing a petition with the Secretary of State was shortened by three weeks from the time period

mandated by the Colorado Constitution; petition circulators were required to sign, date, and notarize an affidavit averring that each signature was affixed in the circulator's presence, that each signature was legitimate to the best of the circulator's knowledge, and that the circulator did not pay the signatories; all petition circulators were required to be residents of Colorado ("the Residency Requirement"),[3] and to show identification to the Secretary of State to verify such residency; all proponents of initiatives were required to maintain a list of names and addresses of circulators and notaries, and file such list with the Secretary of State; all circulators were required to make themselves available to testify when allegations of fraud and the like were raised; all proponents of initiatives were required to inform circulators of the newly-created and mandatory circulator training programs implemented by the Secretary of State; circulators could not be paid more than twenty percent of their compensation on a per-signature basis ("the Pay-Per-Signature Ban"); additional signatures submitted to cure defects resulting from invalid signatures were required to be submitted at least three months and three weeks before the election – shortening the time provided by the Colorado Constitution; individuals successfully challenging invalid signatures were permitted to recover attorney fees and costs from the person responsible for the invalid signatures; in order to pay circulators, a proponent had to obtain a license from the Secretary of State, which could be denied if the proponent did not agree that it would not pay circulators more than twenty percent of their compensation on a per-signature basis, or if no representative of the proponent had completed mandatory training established by the Secretary of

---

[2] A more detailed description of each of the provisions of HB 1326 is found in the Second Amended Complaint. [Doc. 47] at Paragraphs 39-54.
[3] The Residency Requirement had been part of Colorado law before the Act was passed.

State; un-licensed proponents were subjected to a fine; and any proponent who violated the Pay-Per-Signature Ban was required to have its license revoked for 90 to 180 days.

Plaintiffs asserted ten Claims for Relief in response to passage of the Act.  First, they asserted that the Residency Requirement violated the First and Fourteenth Amendments. Second, they asserted that the requirement that circulators show identification to the Secretary of State to verify their in-state residency violated the First and Fourteenth Amendments because it enforced the Residency Requirement.  Third, they asserted that the requirement that circulators make themselves available for challenges to petitions violated the First and Fourteenth Amendments.  Fourth, they asserted that the mandatory state-run training programs violated the First and Fourteenth Amendments.  Fifth, they asserted that the Pay-Per-Signature Ban violated the First and Fourteenth Amendments.  Sixth, they asserted that the shortened time for presenting completed petitions to the Secretary of State violated the First and Fourteenth Amendments. Seventh, they asserted that the award of attorneys fees against anyone responsible for fraud in the circulation process violated the First and Fourteenth Amendments.  Eighth, they asserted that the revocation of license based upon a violation of the Pay-Per-Signature Ban violated the First and Fourteenth Amendments because it enforced the Pay-Per-Signature Ban.  Ninth, they asserted that the requirement that proponents file reports regarding the compensation of circulators violated the First and Fourteenth Amendments because it enforced the Pay-Per-Signature Ban. And tenth, they asserted that the penalties for failure to obtain a license violated the First and Fourteenth Amendment because it enforced the Pay-Per-Signature Ban.  Although Plaintiffs asserted ten claims for relief, the central issues to this case were those claims relating to the

Residency Requirement and the Pay-Per-Signature Ban.  (*See, Affidavit of David Lane,* Exhibit

1).

## II. Plaintiffs Sought and Obtained a Preliminary Injunction

On April 12, 2010, Plaintiffs filed a Motion for Preliminary Injunction [Doc. 15]. On

May 13, May 28 and June 2, 2010, this Court held a hearing on Plaintiffs' Motion [Doc. 42, 54,

57].  At the hearing, this Court ordered the Parties to submit additional briefing by June 4, 2010.

On June 11, 2010, this Court granted Plaintiffs Motion for a Preliminary Injunction, enjoining

Defendant from enforcing the Pay-Per-Signature Ban, and any ancillary provision enforcing the

Pay-Per-Signature Ban – recognizing a likelihood of success on the merits with respect to

Plaintiffs' Fifth, Eighth, and Ninth Claims for Relief with respect to the Pay-Per-Signature Ban.

[Doc. 60.]  On August 13, 2010, this Court issued another Order granting Plaintiffs' request for a

preliminary injunction.  The Court recognized a likelihood of success on the merits of Plaintiffs'

First and Second Claims for Relief, which challenged the Residency Requirement.  [Doc. 72.]

At the commencement of the preliminary injunction hearing, Plaintiffs' counsel made it

clear that the only important issue before the Court was the pay per signature/pay per hour issue

as that issue was going to prevent some of the Plaintiffs from successfully putting their issues on

the ballot.  It was made clear that the other issues were ancillary.  It was also clear that during the

litigation, the State announced that it was not going to enforce the provision of the statute which

shortened the time for filing petitions nor would it enforce the provisions mandating that only

Colorado residents could circulate petitions.  These announcements both by the Plaintiff and the

Defendant helped this Court streamline the litigation.

### III. Plaintiffs Sought and Obtained a Permanent Injunction

Despite the narrowing of issues, for almost two years the Parties engaged in substantial and contentious litigation.  Despite having conceded that the Residency Requirement was an unconstitutional violation of the First Amendment early on in the proceedings, Defendant continued to defend its legitimacy.  The Parties deposed approximately twenty people, exchanged nearly twenty thousand pages of written discovery, attended multiple hearings, and engaged in substantial motions practice. On the eve of trial, Defendant conceded that the Residency Requirement violated the First Amendment, and the parties filed a Consent to Entry of Final Judgment on Plaintiffs' First Claim.  [Doc. 339.]

Trial proceeded on Plaintiffs' Fifth Claim for Relief, challenging the Pay-Per-Signature Ban.  After an eight-day bench trial, Plaintiffs obtained a permanent injunction.  Defendant is therefore permanently enjoined from enforcing the Pay-Per-Signature Ban.

Having obtained Final Judgment against Defendant on their core claims – that the Residency Requirement and the Pay-Per-Signature Ban violated the First and Fourteenth Amendments – Plaintiffs are entitled to an award of reasonable attorney's fees.

### ARGUMENT

"In any fee request under §1988(b), a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).  Because Plaintiffs were the prevailing party in this litigation, and because their fee request is reasonable, they are entitled to an award of attorneys' fees.  Furthermore, due to the nature of this case, the

lodestar amount should be enhanced.  Finally, Plaintiffs are also entitled the reasonable costs incurred in this litigation.

### I.   Plaintiffs were the "Prevailing Parties" in this Proceeding

The first element that Plaintiffs must prove in order to establish their entitlement to a fee award is that they were the "'prevailing party' in the proceeding." *Robinson*, 160 F.3d at 1280. "Under [the Supreme Court's] generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks omitted).  "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).  Furthermore, "the prevailing party inquiry does not turn on the magnitude of the relief obtained, and . . . the degree of the plaintiff's success does not affect eligibility for a fee award." *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997).

Obtaining a permanent injunction that requires "the defendant officials to change their behavior in a way that directly benefit[s] the plaintiff" renders the plaintiff a prevailing party for purposes of Section 1988. *Lefemine v. Wideman*, 133 S. Ct. 9, 10 (2012) (per curiam). Likewise, a plaintiff who obtains a consent to entry of final judgment, like the one entered in this case, is a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (noting that, to be considered a prevailing party, "[t]he plaintiff must obtain an enforceable judgment against the defendant from

whom fees are sought, or comparable relief through a consent decree or settlement" (internal citations omitted)).

Plaintiffs obtained a consent to entry of judgment on their First Claim for Relief, challenging the Residency Requirement.  They subsequently obtained a permanent injunction on their Fifth Claim for Relief, challenging the Pay-Per-Signature Ban.  Plaintiffs are thus prevailing parties for purposes of Section 1983, and, "the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989) (internal quotation marks omitted).  Because no such special circumstances exist in this case, Plaintiffs are entitled to a reasonable fee award.

## II.  Plaintiffs' Fee Request is Reasonable

After establishing that they prevailed in the proceedings, Plaintiff must establish that their "fee request is 'reasonable.'" *Robinson*, 160 F.3d at 1280.  As an initial matter, because Plaintiffs succeeded on their core claims, and all of their claims involved common facts and legal theories, they are entitled to a reasonable fee award for their counsel's work on the entire litigation – not simply the work on their First and Fifth Claims for Relief.  Furthermore, the number of hours billed and the hourly rates provided are reasonable, establishing a reasonable lodestar value for the fee award.

### A.  Plaintiffs' Counsel is Entitled to a Fully Compensatory Fee

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  Plaintiffs obtained judgment against Defendant on their First and Fifth Claims for Relief.  They also obtained a preliminary injunction enjoining

enforcement on the provisions at issue in their Eighth and Ninth Claims for Relief.  Because all

of Plaintiffs' claims involved common facts and legal theories, Plaintiffs' counsel is entitled to a

fee award for all ten claims asserted:

> "In [some] cases the plaintiff's claims for relief will involve a common core of
> facts or will be based on related legal theories.  Much of counsel's time will be
> devoted generally to the litigation as a whole, making it difficult to divide the
> hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a
> series of discrete claims.   Instead the district court should focus on the
> significance of the overall relief obtained by the plaintiff in relation to the hours
> reasonably expended on the litigation."  Accordingly, *Hensley* emphasized that
> "[where] a plaintiff has obtained excellent results, his attorney should recover a
> fully compensatory fee," and that "the fee award should not be reduced simply
> because the plaintiff failed to prevail on every contention raised in the lawsuit."

*Riverside v. Rivera*, 477 U.S. 561, 569 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435

(1983)) (alterations in original) (internal citation omitted).  Plaintiffs' challenges to the

Residency Requirement and the Pay-Per-Signature Ban constituted the major focus of this

litigation.  Ex. 3 Lipinski Expert Opinion, para. 7 ("The rulings represented a near-total victory

for KLN, as KLN informed the Court that the case would focus on the pay-per-signature and pay-

per-hour restrictions, and the State consented that it would not enforce the statutory provisions

shortening the time for filing petitions or limiting petition circulators to Colorado residents.").

Plaintiffs' Second Claim for Relief, for example, challenged the requirement that circulators

show identification confirming Colorado residency – a provision of the law designed to enforce

the Residency Requirement.  Defendant, of course, consented to entry of judgment against him

on the Residency Requirement challenge.  Similarly, Plaintiffs' Eighth and Ninth Claims for

Relief challenged ancillary provisions of the law designed to enforce the Pay-Per-Signature Ban.

Plaintiffs ultimately obtained a permanent injunction barring enforcement of the Pay-Per-

Signature Ban.  Litigation of all of Plaintiffs' claims revolved around the same facts and legal

9

theories: namely, the chilling effect of the newly enacted restrictions on circulators' willingness to circulate petitions in Colorado.  Ex. 1 Lane Aff., ¶ 28.

It is also very important for this Court to carefully consider the nature of this litigation.  In many § 1983 cases, damages are awarded against a wrongdoer, thereby giving plaintiff's counsel a fund of damages to draw upon as well as a court-ordered fee shift pursuant to § 1988.  In this case, however, because the State of Colorado was the defendant, under the Eleventh Amendment there was never any possibility of damages being awarded thus making the only prospect of an attorney's fee being the statutory fee shift.  This made the litigation much riskier for Plaintiffs' counsel.  Moreover, because the Plaintiffs in this matter were not financially able to pay for the costs attendant to litigation, there was a very significant possibility that in addition to never being paid attorneys fees for three years worth of hard-fought litigation, Plaintiffs' counsel would never be reimbursed for the costs of expert witnesses, depositions, travel, and the like.

Similarly, given that the merits of the pay per signature/pay per hour issue resulted in a split among the circuits as outlined in this Court's opinion and in all prior briefings on point, the odds of prevailing in this matter were far from certain.

**B.  The Lodestar Amount**

"A court will generally determine what fee is reasonable by first calculating the lodestar – the total number of hours reasonably expended multiplied by a reasonable hourly rate – and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome."  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

### 1.  Summary of Plaintiffs' Counsel's Hours and Rates

The following is a summary of the hourly rates hours billed by each attorney and staff

member who worked on this case.  The reasonableness of these numbers is explained in the

Section 2, below.

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| David A. Lane | $500 | 671.40 | $335,350.00 |
| Darold W. Killmer | $500 | 8.6 | $4,300.00 |
| Mari Newman | $450 | 12.7 | $5,715.00 |
| Lisa Sahli | $350 | 1,920.3 | $653,625.00 |
| Lauren Fontana | $300 | 41.90 | $12,570.00 |
| Paralegals | $150 | 77.60 | $11,640.00 |
| Legal Assistants | $100 | 0 | $0 |
| **TOTAL** | | | **$1,023,200.00** |

These amounts are supported by the Affidavit of David Lane (Exhibit 1) and time sheets,

attachments hereto as Exhibits 7 through 12 respectively, including specific descriptions and time

spent on tasks performed.

### 2.  Plaintiffs' Counsel's Hours are Reasonable

"The first step in calculating fee awards is to determine the number of hours reasonably

spent by counsel for the party seeking the fees."  *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.

1983).  "Once an applicant for a fee has carried the burden of showing that the claimed rate and

number of hours are reasonable, the resulting product is presumed to be a reasonable fee as

contemplated by Section 1988."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.

1998).  The Tenth Circuit has compiled a list of factors to be considered when evaluating the

reasonableness of a prevailing party's attorney's hours submitted in a fee petition: "(1) whether

the tasks being billed would normally be billed to a paying client, (2) the number of hours spent

on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5)

11

the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers." *Robinson v. City of Edmond*, 106 F.3d 1275, 1281 (10th Cir. 1998) (emphasis added) (internal quotation marks omitted); *accord Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).

### a.  Plaintiffs' Counsel Appropriately Exercised Billing Judgment

In evaluating a fee request, "[t]he district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  To that end:

> "Compiling raw totals of hours spent . . . does not complete the inquiry.  It does not follow that the amount of time actually expended is the amount of time reasonably expended.  In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority."

*Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).  In exercising billing judgment, "[t]he prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, and otherwise unnecessary.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In this case, Plaintiffs' counsel has diligently exercised billing judgment.  For example, lead counsel has not billed for *any time* spent reviewing or drafting the thousands of emails exchanged between all counsel in this case.  Ex. 1, Lane Aff. ¶ 20; Ex. 3 Lipinski Expert Opinion, 8.  Likewise, duplicative time entries have been removed, and work determined to be performed inefficiently or unnecessarily has been reduced or eliminated.  Ex. 1 Lane Aff. ¶ 20; Ex. 3 Lipinski Expert Opinion, 8.  In addition, after winning a preliminary injunction, Plaintiffs

submitted a Motion for Attorney's Fees and Costs [Doc. 63].  At that point, Plaintiffs' counsel

exercised billing judgment in determining that approximately 100 hours of paralegal work, billed

at that time at $110 per hour, would not be included in the Motion for Attorney's Fees and Costs.

Ex. 3 Lipinski Expert Opinion, 8.  In the instant Motion, Plaintiffs' counsel has exercised billing

judgment to charge only for paralegal time consisting of tasks related to court filings, despite the

fact that paralegals spent numerous hours on other tasks, including assisting with trial

preparation, making travel arrangements with witnesses, discussing scheduling with opposing

counsel and the myriad tasks paralegals always perform.  Ex. 1 Lane Aff., ¶ 20.  In addition,

Plaintiffs' counsel is not billing for any legal assistant time, thereby eliminating numerous hours

of work on investigation, assistance with discovery issues, and similar tasks *Id.*  All of the firm's

legal assistants are college graduates engaged primarily in investigative tasks such as tracking

down potential witnesses and interviewing them.  None of this time was billed. This may be

considered an overly generous exercise of billing judgment, as tens of thousands of dollars have

been cut from this Petition as a result.

### b.  The Number of Hours Spent on Each Task was Reasonable

"[W]hen examining an attorney's fee claim, the district court should examine the hours

spent on each task to determine the reasonableness of the hours reported.  The district court,

however, does not have to justify every hour allowed in awarding attorney's fees under federal

statutes."  *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (internal

citation omitted).  Similarly, there is no "requirement that district courts announce what hours are

permitted for each legal task."  *Mares v. Credit Bureau of Raton*, 801 F.2d 1997, 1202 (10th Cir.

1986).

Given the sheer volume of motions and other court filings in this case, along with approximately 20,000 pages of discovery documents involved, Plaintiffs' counsel was reasonable in spending a significant amount of time drafting responses to motions. *See Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009) ("The Court recognizes that a diligent attorney, even one with over 30 years of practice experience, should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time.").

In addition, the complex nature of the legal claims in this case warranted extensive legal research. *See Homans v. City of Albuquerque*, 264 F. Supp. 2d 972, 979 (D. N.M. 2003) ("[I]t is not unreasonable for attorneys to bill some amount of time to legal research on specific issues unique to a particular motion.  Indeed, such a task is integral to the briefing process.").

### c.   The Complexity and Importance of this Case Necessitated Expenditure of Voluminous Hours

This litigation has undoubtedly been complex.  Plaintiffs obtained two separate preliminary injunctions [Doc. 60 & 72], and, after an eight-day bench trial, obtained a permanent injunction via a 46-page Opinion by the Court [Doc. 364].  *See Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1248 (D. Colo. 2010) (noting that complexity matters in fee determinations); *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009) (noting that a court must consider complexity).

In addition, given the overall public interest served by Plaintiffs' victory in this litigation, Plaintiffs' counsel's hours are reasonable.  "Particularly in civil rights cases such as this, 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"  *Joseph A. by Wolfe v. New Mexico*

*Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (quoting *Hensley v. Eckckerheart*, 461 U.S. 424, 435 (1983). After all, "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Rivera*, 477 U.S. at 574. Indeed, "[p]otential liability for full fee awards can deter violations of the civil rights laws, especially in situations where the fee award represents a significant portion of a defendant's financial exposure." *Ramos*, 713 F.2d at 552. The invalidation of the Residency Requirement and the Pay-Per-Signature Ban has undoubtedly already affected the ballot initiative process in Colorado. For example, Amendment 64, which legalized recreational marijuana, was placed on the ballot in 2012 after a successful petition drive. Ex. 4, Tvert Affidavit. Mr. Tvert avers that, given that the Amendment 64 campaign paid petition circulators by the signature, had the Pay-Per-Signature ban been in effect in 2012, it is unlikely that Amendment 64 would have made it to the ballot. Voters ultimately approved of Amendment 64, legalizing recreational marijuana in Colorado. According to Mr. Tvert, without Plaintiffs' success in this litigation, that result was extremely unlikely. This Amendment has had national and even international significance in causing a wholesale reexamination of this nation's policy on marijuana. Similarly, Jon Caldara previously testified that absent this Court's Orders enjoining enforcement of the statute, his ballot initiative would not have ever made the ballot. He has reiterated this position in Ex. 5, attached.

The importance of this case cannot be overlooked:

This case required creative analysis, the development of a sophisticated legal strategy, and a persistent approach to the litigation. KLN represented clients who were challenging a series of statutory restrictions on the use of circulators to collect signatures on petitions for initiatives, as well as similar statutory regulations impacting the process for gathering signatures to place an initiative on the Colorado ballot. The issues at stake represented nothing less than

fundamental freedoms guaranteed in the First Amendment of the United States Constitution.  This was a weighty legal battle indeed.

Ex. 3 Lipinski Expert Opinion, 7.  Indeed, "[t]his was an extremely difficult case in which a favorable outcome was by no means assured at the outset."  Ex. 2 Connelly Aff., ¶ 23.  This was particularly true because "most federal appellate precedent had upheld state statutory bans on 'pay-per-signature.'"  *Id.*  Nonetheless, "Plaintiffs appear to have prevailed in this case because, contrary to plaintiffs bringing similar federal constitutional challenges in other states, they effectively marshaled and presented the facts during the eight-day bench trial."  *Id.* at ¶ 23.

### d.  Defendant's Tenacious Litigation Required Plaintiffs' Counsel to Expend a Significant Number of Hours on this Case

"The Supreme Court has . . . recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).  Where, as here, a defendant engages in hard-fought, knock-down-drag-out litigation, a plaintiff's attorneys are reasonable in expending significant hours litigating:

> [H]ere the effort expended by the defendants suggests at least that they viewed the case as sufficiently complex and serious to warrant the expenditure of large amounts of attorney time, and it highlights the tooth-and-nail litigating approach the city used in this case.  In light of this tenacious effort by the city and its lawyers, the amount of attorney time expended by the plaintiffs begins to look more reasonable, not less.

*Id*. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Copeland*, 641 F.2d at 904.  A "client cannot escape the consequences of tactics that undeniably drive up the costs of litigation, even if such tactics amount to no more than aggressive advocacy."  *Latham v. First Marine Ins. Co.*, 16 F. App'x 834, 839 (10th Cir. 2001).

16

Standing on its own, Defendant's refusal to concede to the blatant unconstitutionality of the Residency Requirement until three days before trial is enough to warrant a significant fee award.  *See, e.g.*, *Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983) ("[H]ad the state defendants not decided to stonewall on all issues, . . . this case would have a different posture.");  *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1248 (D. Colo. 2010) ("I agree with Plaintiff that a certain amount of time expended by Plaintiff was due to the maneuvering of the other side, or the lack of cooperation or response."); Ex. 3 Lipinski Expert Opinion, 8; Ex. 2 Connelly Aff., ¶ 20.  Defendant's voluminous discovery requests resulted in Plaintiffs' having to gather close to twenty thousand pages of documents, many of which had to be gathered and delivered from out of state.  Ex. 3 Lipinski Expert Opinion, 8.

Defendant likewise filed numerous motions to compel and motions to strike, requiring Plaintiffs to conduct legal research, draft extensive briefs, and sometimes argue their position to this Court.  Furthermore, Plaintiffs were required to conduct significant briefing regarding a discovery request from the Defendant that violated the First Amendment:

> Plaintiffs objected to a defense request for donor information regarding the Independence Institute, arguing that such discovery would infringe the Institute's First Amendment rights.  *See* Docs.  Docs.  Docs.  111, 118, 121, 124, 125, 126.  In a persuasive opinion, Magistrate Judge Hegarty upheld the Institute's constitutional arguments, and granted a protective order blocking the discovery.  Doc. # 127.  The defense objections to Magistrate Judge Hegarty's ruling spawned further briefing, *see, e.g.*, Docs. ## 129, 138, and Judge Brimmer ultimately upheld the ruling in favor of the Institute.  Doc. #337.  It is telling that the KLN firm, in successfully mounting a First Amendment challenge to a state statute, successfully defended against state discovery requests on First Amendment Grounds.

Ex. 2 Connelly Aff., ¶ 19.

Based upon Defendant's expenditure of extensive time and resources defending this case – and even defending a provision of the law which Defendant knew to be unconstitutional from the early stages of the litigation – Plaintiffs' counsel's hours spent in response are reasonable.

### e.  Plaintiffs' Counsel Diligently Minimized Attorney Time Spent

"Another factor the court should examine in determining the reasonableness of hours expended is the potential for duplication of services.  'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.'"  *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). With the exception of the preliminary injunction hearing, two key depositions, and the trial,[4] Plaintiffs were represented by only one attorney at hearings, depositions, and other court appearances. Ex. 1 Lane Aff., ¶ 21; Ex. 3 Lipinski Expert Opinion, 8; *cf. Ramos*, 713 F. 2d at 554 ("More than a dozen attorneys spent time on the instant litigation for the plaintiffs; at least five attorneys spent more than 200 hours each on the case and two spent more than 2000 hours each. . . . The court should . . . review[] with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings."). This stands in stark contrast to Defendant, who was often represented by multiple attorneys at court appearances and depositions. *See id.* ("The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required."); Ex. 3 Lipinski Expert Opinion, 8 ("Ms. Sahli

---

[4] "Because utilizing more than one lawyer may be reasonable in some situations, such as during settlement conferences or during trial, [the Tenth Circuit has] decline[d] to require an automatic reduction of reported hours to adjust for multiple representation or potential duplication." *Ramos*, 713 F.2d at 554.

was the only KLN attorney present at a number of hearings, compared with the multiple attorneys from the Attorney General's Office who attended the court appearances in the Case."); Ex. 2 Connelly Aff., ¶ 22 ("At each step of the way, plaintiffs used fewer attorneys (and presumably fewer total attorney hours) than did the Attorney General's Office.").

In addition, while defense counsel traveled out of state for multiple depositions, Plaintiffs' counsel attended the depositions via telephone or Skype, eliminating all billing for travel time in addition to the costs of travel.  Ex. 1 Lane Aff., ¶ 21; Ex. 3 Lipinski Expert Opinion, 8; *Homans v. City of Albuquerque*, 264 F. Supp. 2d 972, 978-79 (D. N.M. 2003) (noting that plaintiff's counsel "tried to litigate this matter efficiently and inexpensively, avoiding fees not necessary for the successful litigation of their client's claims").  Furthermore, the lion's share of the hours billed on this case were billed by Lisa Sahli, an associate at the law firm, whose hourly rate is $150 lower than partner David Lane's.  *See Gol TV, Inc. v. EchoStar Satellite Corp.*, No. 08-cv-02143-PAB-MJW, 2011 U.S. Dist. LEXIS 103705, at *7-8 (D. Colo. Sept. 13, 2011) (analyzing hours billed by partners and associates, and concluding that counsel did not engage in "top-heavy billing"); Ex. 3 Lipinski Expert Opinion, 8 ("Ms. Sahli handled tasks appropriate for an attorney with her level of experience, while Mr. Lane served in a lead lawyer capacity."); Ex. 2 Connelly Aff., ¶ 17 ("The point most striking to me is how leanly the KLN firm staffed this complex and important case.  Most of the heavy pretrial lifting was done by Ms. Sahli (a senior associate) who at most hearings with the only plaintiffs' lawyers while three or four lawyers appeared from the Colorado Attorney General's Office.").

Plaintiffs' counsel thus took advantage of all available opportunities to reduce the number of attorney hours spent on this litigation, and the hours submitted are therefore reasonable.

### 3.   Plaintiffs' Counsel's Rates are Reasonable

Plaintiffs' counsels requested hourly rates, which are in line with both the hourly rates they charge and are paid by clients and the local market, are reasonable.  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *accord Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) ("Hourly rates must reflect the 'prevailing market rates in the relevant community.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Furthermore, "[t]he 'local market rate' is usually the state or city in which counsel practices." *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1249 (D. Colo. 2010) (quoting *Ellis v. Univ. of Kansas Medical Center*, 163 F. 3d 1186, 1203 (10th Cir. 1998)). In addition, "[t]he hourly rate should be based on the lawyers' [sic] skill and experience in civil rights or analogous litigation."  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

"The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  In this case, over the approximately three years it has taken to reach a final judgment, Plaintiffs' counsel's hourly rates have increased pursuant to standard rate changes implemented by the law firm.  At the preliminary injunction stage, based on the hourly rates in place in June 2010, Plaintiffs' Motion for Fees and Costs requested total fees of $136,325.  As of the filing of this Motion, David

Lane's hourly rate is $500,[5] Darold Killmer's hourly rate is $500,[6] Mari Newman's hourly rate is

$450,[7] Lisa Sahli's hourly rate is $350,[8] Lauren Fontana's hourly rate is $300,[9] paralegal work is

billed at $150 per hour, and legal assistant work is billed at $100 per hour.  Thus, the fees billed

on the pre-preliminary injunction work, adjusted for the updated hourly rates, now total

$156,125.  The legal experience and accomplishments of each of Plaintiffs' lawyers in this case

is set forth in detail in the attached Affidavit of David Lane (Exhibit __), and the Curriculum

Vitae of each lawyer.  *See C.V. of David Lane,* Ex. 13; *C.V. of Darold Killmer,* Ex. 14; *C.V. of*

*Mari Newman,* Ex. 15; *C.V. of Lisa Sahli,* Ex. 16; *C.V. of Lauren Fontana,* Ex. 17.  This amount

is included in the Summary of Plaintiffs' Counsel's Hours and Rates above.  The updated hourly

rates are the standard rates charged and paid for work performed by these individuals when any

client retains KILLMER, LANE & NEWMAN on an hourly basis. Ex. 1 Lane Aff., ¶ 12.  The Tenth

Circuit has affirmed a fee award where "the hourly rates requested and awarded to some of

plaintiffs' attorneys represent[ed] the actual current billing rates for the . . . attorneys who

represented them."  *Reazin v. Blue Cross & Blue Shield, Inc.*, 899 F.2d 951, 983 (10th Cir. 1990).

---

[5] Mr. Lane has practiced criminal/civil rights litigation for 33 years, and is a partner at KILLMER, LANE & NEWMAN.

[6] Mr. Killmer has practiced civil rights litigation for 27 years, and is a partner at KILLMER, LANE & NEWMAN.

[7] Ms. Newman has practiced civil rights litigation for 16 years, and is a partner at KILLMER, LANE & NEWMAN.

[8] Ms. Sahli has practiced civil rights litigation for 20 years, and was an associate at KILLMER, LANE & NEWMAN during this litigation.

[9] Ms. Fontana has practiced civil rights litigation for three years, and was an associate at KILLMER, LANE & NEWMAN during this litigation.

The hourly rates charged by each of the lawyers in this case are reasonable, based on each lawyer's experience and accomplishments. Mr. Lane's hourly rate of $500 is reasonably based upon his 33 years of practice and his well-known "reputation for accepting the most challenging cases, occasionally for unpopular clients or causes" and his ability to "win[] them through his innate litigation talents, creativity, and persistence." Ex. 3 Lipinski Expert Opinion, 5. In addition, "[v]ery few Colorado attorneys have his depth of jury-trial experience; there are Colorado private-practice attorneys with similar seniority but much less in-court [experience] who bill private clients at similar or even higher hourly rates." Ex. 2 Connelly Aff., ¶ 13. Mr. Killmer's and Ms. Newman's hourly rates are likewise reasonable. "Hourly billing rates of $450-500 for experienced civil-litigation partners such as Darold Killmer and Mari Newman, who have impressive backgrounds and extensive experience handling major civil-rights litigation, are reasonable given the prevailing rates in the Denver market." Ex. 2 Connelly Aff., ¶ 14. In July 2010, in the case of *Schlenker v. City of Arvada*, No. 09-cv-01189-WDM-KLM, Judge Mix approved hourly rates of $450 for Mr. Killmer and $400 for Ms. Newman. Ex. 3 Lipinski Expert Opinion, 6. "With annual rate increases of three percent, which is consistent with (and, if anything, at the lower end of) the market rate increases in the Denver metropolitan area over the past three years, in 2013, Mr. Killmer's hourly rate would be approximately $492 per hour and Ms. Newman's hourly rate would be approximately $437 per hour." *Id.* Thus, the submitted hourly rates for Mr. Killmer and Ms. Newman are reasonable. In addition, Ms. Sahli's "hourly rate of $350 is eminently reasonable for an attorney of Ms. Sahli's experience entrusted with . . . key responsibilities in a major federal trial." Ex. 2 Connelly Aff., ¶ 15. Finally, the hourly rates charged by Killmer, Lane & Newman for time expended by its paralegals is

"reasonable for the Denver metro legal market," as "experienced paralegals at [McKenna Long & Aldridge LLP's] Denver office are billed at $230 per hour in 2013." Ex. 3 Lipinski Expert Opinion, 5.

This is consistent with rates in the Denver market place. In 2012, Denver lawyer Kenneth Padilla was awarded $400 per hour in a civil rights case captioned *Trujillo v. Campbell*, 2012 US DIST> LEXIS 70154, (D.Colo. 1012). Denver attorney Lynn Feiger was awarded $500 per hour in 2006 in a case known as the *Denver Mint Class Action,* which was an EEOC proceeding. Darold Killmer of KLN was awarded $450 per hour in 2010 for an excessive force case alleging police misconduct in *Schlenker v. city of Arvada*, 2010 U.S. Dist. LEXIS 141480 (D.Colo. 2010). In the *Schlenker* case, paralegal rates of $110 per hour were paid.

Because these rates are consistent with each attorney's extensive experience and are commensurate with the average rights for civil rights litigation in Denver with attorneys of this level of effectiveness and experience, they are reasonable.

### 4. The Lodestar Should Be Multiplied

While the lodestar amount "is presumed to result in a reasonable fee," it "can then be adjusted in light of the specifics of the case." *Sierra Club v. Cripple Creek & Victor Gold Mining Co.*, 509 F. Supp. 2d 943, 952 (D. Colo. 2006). In determining whether to adjust the lodestar amount, a court considers:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for the services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) whether the case was desirable; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases.

*Sierra Club*, 509 F. Supp. 2d at 952 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  The Supreme Court has "reject[ed] any contention that a fee determined by the lodestar method may not be enhanced in any situation," but has indicated that enhancements should be reserved for "rare" cases.  *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673-74 (2010).  This is one of those "rare" cases.

From the outset of this litigation, Plaintiffs and their counsel took on the daunting task of seeking a judicial determination that a statute passed by the Colorado Legislature was unconstitutional on its face: "From the inception of the case, KLN faced the challenges of convincing a judicial officer to strike sections of the Colorado Revised Statutes and to distinguish adverse decisions from other Circuits."  Ex. 3 Lipinski Expert Opinion, 7. Defendant has been represented from the start by the entire force of the Colorado Attorney General's Office.  *Id.* (noting that KLN's "adversary [was] represented by attorneys supported by the significant resources of the Colorado Attorney General's Office.").  The Eleventh Amendment barred Plaintiffs from seeking monetary damages from the Defendant, the Secretary of State in his official capacity.  *Id.*; *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Thus, there was *never* an opportunity for Plaintiffs' counsel to collect compensation based upon a contingency fee agreement.  Ex. 2 Connelly Aff., ¶ 25 ("[T]he case involved no possibility of money damages that could offer the prospect of lawyers recovering double, triple, or even four or five times their hourly rate.").

Plaintiffs' counsel knew at the outset of this case that the only opportunity for compensation for years of work would occur if Plaintiffs were successful at trial. Ex. 2 Connelly Aff., ¶ 25 ("It does not make *economic* sense for a firm to take on a contingent case with

uncertain odds of recovery if the worst outcome is recovering nothing and the best outcome is recovering the firm's normal hourly rate years after the services are rendered."). That alone would have dissuaded virtually all attorneys from representing Plaintiffs. *Id.* ("Given the daunting task of having to overcome contrary federal appellate precedent, and the fact that the Colorado Attorney General's Office was certain to mount an aggressive defense of the constitutionality of a state statute, many plaintiffs' attorneys would have declined taking on this case."). If a civil rights plaintiff is unable to find counsel willing to take his potentially unpopular and risky case, "his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." *Rivera*, 477 U.S. at 575 (internal quotation marks omitted). The extreme risk undertaken by Plaintiffs' counsel in this case thus justifies enhancing the lodestar. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731 (1987) ("Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market."); *see also Chem. Bank v. City of Seattle*, 19 F.3d 1291, 1302 (9th Cir. 1994) (holding that district court abused its discretion in enhancing fee award where "the case was fraught with risk and recovery was far from certain" (internal quotation marks omitted)).

This case is therefore within the class of "rare" cases in which the lodestar should be enhanced.

### III. Plaintiffs are Entitled to an Award of the Reasonable Costs Incurred in this Litigation

Pursuant to Federal Rule of Civil Procedure 54(d), as prevailing parties, Plaintiffs are entitled to an award of the costs incurred as part of the litigation.  *True Temper Corp. v. CF&I Steel Corp.*, 601 F.2d 495, 509 (10th Cir. 1979).  As detailed in the Bill of Costs, attached hereto as Exhibit 18[10], Plaintiffs incurred total costs of $23,934.38 in this litigation.  Thus, Plaintiffs respectfully request that the Court order Defendant to pay those costs in full.

### IV. Certification of Counsel

Undersigned counsel hereby certifies that the billing rates reflected in this motion and the attached billing affidavits are the normal rates billed by counsel and paid by clients where an hourly fee is charged to the client.

Undersigned counsel further certifies that the costs and expenses reflected in this motion are the costs and expenses normally charged to clients of the below signed law firm, and that this practice is normal within the Denver legal community.  The referenced costs and expenses are the obligation of Plaintiff in this case.

### V. Certification Pursuant to D.C.COLO.LCIvR 7.1

Undersigned counsel conferred with counsel for the Defendant regarding the filing of this Motion, who states that Defendant opposes the motion.

### CONCLUSION

---

[10] The bill of costs has contemporaneously been filed with the Clerk of the Court pursuant to Rule.

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order granting them attorney fees in the amount of $1,008,640.00 and costs in the amount of $23,934.38 as they are the prevailing parties in this matter pursuant to 42 U.S.C. § 1988.[11]

Respectfully submitted this 2nd day of July, 2013.

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*
_____
David A. Lane
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001 (FAX)
dlane@kln-law.com

ATTORNEY FOR PLAINTIFFS

---

[11] Plaintiffs reserve the right to file a supplemental motion for fees and costs incurred in connection with the preparation of this Motion, and work performed and expenses incurred hereafter.

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on, July 2, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

   Amy Colony
   Amy.colony@state.co.us

   Matthew D. Grove
   Matthew.Grove@state.co.us

   LeeAnn Morrill
   LeeAnn.Morrill@state.co.us


        KILLMER, LANE & NEWMAN LLP

        *s/ Jamie Akard*
        Jamie Akard